## THE LIBERTY No. 4.*

*(District Court, S. D. Ohio. May, 1881.)*

1. TORT—SUIT IN ADMIRALTY BY INSURANCE COMPANY AGAINST VESSEL CAUSING LOSS—SUBROGATION—PARTIES.

   Certain insurance companies, under a contract with the owner of a cargo, issued to him a policy of insurance upon the same. The owner of a barge contracted with the owner of the cargo to receive and deliver the cargo at a port of destination, and, having received the cargo, the barge owner contracted with a tow-boat to have the barge towed. By the negligence and fault of the tow-boat the cargo was lost. The insurance companies paid the loss and took an assignment of the claims.

   *Held:* (1) Under such circumstances, the owner of the cargo could maintain an action against the tow-boat for the loss.

   (2) That the insurance companies, by the payment of the loss and assignment of the rights of the insured, became subrogated to such rights.

---

*Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati bar.

(3) That an action by the insurance companies, to recover for the loss occasioned by negligence, is not an action upon contract.

(4) That such action may be maintained in admiralty in their own names, although no privity may have existed between them and the tow-boat.

In Admiralty. On Exceptions to Libel.

*Sayler & Sayler* and *Paxton & Warrington*, proctors for libellants.

*Lincoln, Stephens & Slattery*, for defendant.

SWING, D. J. This action comes before the court on exceptions filed by the defendant to each of the 14 sections of the libel, the defendant claiming that the libel does not state facts sufficient to constitute a cause of action. The averments of the libel, in short, are as follows:

(1) That the Security Insurance Company and the Providence Washington Insurance Company were, in December, 1879, and now are, engaged in the business of insuring all kinds of goods laden upon board of vessels, barges, etc., under the name of the New England Underwriters. (2) That in December, 1879, the Ohio River & Kanawha Salt Company was and still is a corporation in the business of manufacturing, sale, and shipping of salt. (3) That on December 4, 1879, a contract was entered into between the said salt company and the libellants, providing, among other things, for the insurance of all shipments of salt belonging to said salt company for one year at and from ports on the Kanawha and Ohio rivers to ports and places on the Ohio and other rivers by barges, model or square, and by steam; said barges to be towed by regular tow-boats. (4) That under said contract the said libellants did issue their policy of insurance to said salt company, and which, among other things, provides as follows: "That in case of loss or damage under said policy, the assured, in accepting payment thereof, hereby and by that act assigns and transfers to these companies all his or their right or claim for loss or damage as against the carrier, or other person or persons,—to enure to its benefit, however, only to the extent of the amount of the loss and damage and attendant expense of recovery paid or incurred by said companies;" that said policy was in force, and covered and insured the goods stated as lost. (5) That the said salt company was the owner of 2,400 barrels of salt; that certain parties named Hudson Brothers were the owners of a line of barges and steam-boats running on these rivers, and, among others, of the barge Speed; that said Hudson Brothers contracted for a consideration, with said salt company, to receive on said barge Speed, in tow of Liberty No. 4, at Pomeroy, said 2,400 barrels of salt, and deliver the same in good order, etc., at the port of Cincinnati. (6) That in pursuance of said contract said salt company delivered on board said barge Speed the said salt, and the same was covered by said policy of insurance. (7) That said Hudson Brothers contracted with said steam-boat Liberty No. 4 for

the towing of said barge Speed so laden from Pomeroy to Cincinnati, and in pursuance of said contract said steam-boat Liberty No. 4 took charge of said barge so laden and proceeded down the river. (8) That these libellants had no charge or control of said tow-boat nor of said barge, but they were under the exclusive charge and control of the officer of said Liberty No. 4. (9) That by reason of the negligence of and failure to exercise ordinary care, skill, and diligence on the part of the officer of Liberty No. 4, and by reason of the bad and unsound and unseaworthy condition of said Liberty No. 4, and by reason of the Liberty No. 4 not being properly equipped, the said barge Speed and the said salt were sunk in the Ohio river, whereby the said salt company sustained damage to the amount of $2,501.25. (10) That said damage was caused without any fault of the libellants, and without their knowledge as to the condition of said Liberty No. 4. (11) That by reason of said policy of insurance these libellants became liable to pay and did pay to said salt company the said $2,501.25, as it was bound to do, and the said salt company assigned to said libellants all claims and rights of action against said Liberty No. 4 arising out of the sinking of said barge; (12) which damages the owner of the Liberty No. 4 refuses to pay; and (13) the said Liberty No. 4 is within the jurisdiction of this court; and (14) all the premises are within the admiralty jurisdiction of this court.

If this is an action brought on a contract, then, as between the libellants and the steam-boat Liberty No. 4, there is no privity in law. Is the libel, however, sounding in contract, or is it in tort? The libel sets out the contracts, but that is more as a history of the matter than as a foundation for the action. I think the libel is one against the defendant, not for the violation of a contract which it had entered into, but it is a libel for the wrongful and negligent acts of the defendant in failing to carry out what it was bound to when it undertook to tow the barge to Cincinnati. The ninth clause of the libel is as follows:

And libellants further say that by reason of the negligence of, and failure to exercise ordinary care, skill, and diligence in the management and control of said Liberty No. 4 and her said tow by, the master and other officers, agents, employes, and other persons navigating said steam-boat Liberty No. 4; and by reason of the negligence and want of ordinary skill and care, and by mismanagement, of the said master and said other officers, agents, and persons navigating said steam-boat Liberty No. 4, by which the said barge Speed was brought into a place and position of great and unnecessary peril and danger; and by reason of the bad, unsound, and unfit condition of said steam-boat Liberty No. 4 and her machinery; and by reason of the defective, unsound, unfit, and rotten condition of the cylinder timber of said Liberty No. 4; and by reason that said steam-boat Liberty No. 4 was not seaworthy at and before the time

of the committing of the grievances hereinafter named, and at the time of the taking of said barge so laden with salt in tow; and by reason that said steam-boat Liberty No. 4 was not, at the time of taking said barge in tow, and during all the time thereafter until and after the sinking of the said barge as hereinafter set out, properly equipped with the necessary tackle, apparel, furniture, and rigging for the safe and successful towing of said barge, as in law she was in duty bound to be; and by reason that, during all said time last aforesaid, said steamer Liberty No. 4 had no anchor on board,—the said barge Speed and the said salt were, on the ninth day of December, 1879, sunk in the waters of the Ohio river, and 2,101 barrels of said salt were wholly and totally lost and destroyed, whereby the said Ohio River & Kanawha Salt Company sustained damage to the amount of 82,501.25.

This shows clearly that it was not for a breach of the specific contract that the action arose, but for the wrongful acts of the defendant in failing to do as he was bound to do. If this be so, then could the owners of the cargo maintain an action against the Liberty No. 4? Their contract was with the barge, it is true, but the owners of the barge had contracted with the steamer Liberty No. 4 to tow the barge with the cargo; and the damage to the cargo is alleged to have been occasioned by the wrong and negligence of the steamer Liberty No. 4, whose duty it was to tow the barge and cargo safely. I think *The City of Hartford and the Unit*, 97 U. S. 322, is authority for the maintenance of an action by the owner of the cargo against the steam-boat Liberty No. 4. In that case, Hudson S. Rideout and others were owners of the schooner Abbie S. Oakes, and Charles S. Robinson was owner of a quantity of corn at Baltimore, which he shipped upon the schooner for Portsmouth, New Hampshire; that by reason of stress of weather the schooner, on her voyage, was compelled to put into the port of New York, and that those in charge of the schooner employed the steam-tug Unit to tow her from her anchorage through the pass called Hell Gate; that the steam-tug undertook to perform the service, and whilst upon the route they came in sight of the steamer City of Hartford, and the steamer and steam-tug were so negligently, carelessly, and unskilfully maneuvered and navigated that the steamer collided with the schooner and caused her to sink, and that she, with her cargo and property on board, became a total loss, and the

owners of the cargo filed a separate libel against the steamboat City of Hartford and the steam-tug Unit; and Justice Clifford, in delivering the opinion of the court, says that the "owners of the cargo in such a case may, if they see fit, join with the owners of the vessel in promoting the cause of collision, or they may separately, at their election." But the learned counsel for the exceptor claims that the doctrine of this case is only applicable to cases where there has been a positive act, direct force, a collision; but I do not see why a different principle should apply where the loss of a cargo by the sinking of the vessel is occasioned by the wrongful and neglectful act of the steamer towing her without collision, and where such wrongful and negligent acts result in a collision from which the sinking of the vessel is produced which results in the loss of the cargo. *Phila. Wil. & Balt. R. Co.* v. *Phila. & Havre de Grace Steam-boat Co.* 23 How. 209. The wrongful and negligent party is equally liable in either case, and the innocent party has a right to recover his damages. *Steamer Franconia,* 3 FED. REP. 402; *The Atlas,* 93 U. S. 302.

This being so, can the insurer, who has paid to the insured the damages sustained by the wrongful act, and has obtained an assignment of the rights of the insured, maintain the action against the wrong-doer? There is no privity existing between the insurer and the wrong-doer, and at law he might not maintain an action against him; but in equity the insurer is subrogated to all the rights of the insured, and so acquires his claim against the injuring party. 2 Parsons' Maritime Law, 226; *Hall* v. *Railroad Co.* 13 Wall. 367; Desty's Admiralty, 264. And being thus subrogated in all cases where the insured has the right against the authors of the injury, the insurer, on making good the loss, is entitled to enforce the remedy of the insured, although between him and the wrong-doer there is no direct relation or privity of contract upon which to found the action. The recovery is not upon the legal right, but upon the equitable doctrine of subrogation. May on Insurance, 553, 554. And in such a case the insurer may sue in admiralty in his own name. *Propeller Monticello* v. *Mollison,* 17 How. (S. C.) 153; *Ins. Co.* v. *C. D.*

1 Wood, 72. The wrong-doer is bound to make satisfaction. He has not made it to the injured party, but the insurance company has, and the wrong-doer is only interested in having the record in such shape that he will not be called upon to pay the second time. The libel shows not only the payment by the insurance companies to the insured, but an assignment by the insured of all their rights against the wrong-doer, so that in no event can the wrong-doer be called upon to respond again for the wrongful act.

. As a conclusion, I find that this is not a suit upon contract, but one for damages resulting from a wrongful act; that the owners of the cargo could have maintained the action, and that the insurance companies, having paid the damages by subrogation and assignment, may maintain the action in their own names.

The exceptions will, therefore, be overruled.

NOTE. See, also, Wood on Fire Ins. § 490.