## In re LAKELAND TRANSP. CO.

## THE GEORGE W. ROBY.

(District Court, E. D. Michigan, S. D.   July 16, 1900.)

1. COLLISION—DISTRIBUTION OF DAMAGES BETWEEN VESSEL AND CARGO—HARTER ACT.

   The whole object of the Harter act is to modify the relations previously existing between the vessel and her cargo, and it does not affect the relative rights of vessel and cargo owners as claimants against a second vessel for damages arising from collision.  ·

2. SAME—RIGHT TO PRIORITY.

   Where both vessels were in fault for a collision in which one was sunk, with her cargo, the cargo owner has the superior lien upon the fund available for reparation, in the absence of contract affecting such right.

3. SAME—LOSS OF CARGO—SUBROGATION OF VESSEL OWNER TO INSURANCE.

   Where, in a suit for limitation of liability arising out of a collision which resulted in the loss of the second vessel and her cargo, such vessel, although adjudged equally in fault, claimed and was awarded exemption from liability to her cargo owners under the provision of the Harter act, her owners have no right to be subrogated to the claims of the cargo owners against the insurer of the cargo, under the "benefit of insurance" clause of the bills of lading, because the court awards the entire fund for distribution to the cargo owners in preference to the vessel owners on account of the vessel's contributing fault, on the theory that such action necessarily imposed on the vessel the liability for the loss of cargo. In such case the payment of claims entitled to legal preference, as permitted by admiralty rule 55, cannot be said to take anything from the holders of inferior claims, who have no interest in the fund until preferred creditors have been satisfied.

4. SAME—TOTAL LOSS OF VESSEL—MEASURE OF DAMAGES.

   Where a vessel is sunk and totally lost in a collision, and her full value is awarded her owners as damages, they are not entitled, in addition, to recover the amount she would have earned under an unexpired charter.

5. SAME—PRIORITY IN DISTRIBUTION OF DAMAGES—CLAIMS OF CREW FOR LOSS OF EFFECTS.

   The negligence of a ship is so far imputable to her officers and crew that they are entitled to recover from another vessel but half the damages sustained in the loss of their effects as the result of a collision for which their own vessel was equally in fault, and their claims therefor are subordinate to those of the cargo owners.

6. SAME—CLAIM OF CHARTERER FOR LOSS OF FREIGHT.

   The claim of a charterer having full control and management of a vessel, and supplying her master and crew, for loss of freight resulting from a collision, for which such vessel was adjudged equally in fault, against the fund arising from the sale or bonding of the other offending vessel in proceedings instituted by her owners for limitation of liability, stands on the same footing as that of the owners of the chartered vessel, and is subordinate to that of the owners of her cargo.

In Admiralty.   On motion for decree and exceptions to commissioner's report.

John C. Shaw and William B. Cady, for Peter P. Miller and others, owners of the steamer Florida.

F. H. & G. L. Canfield, for British & Foreign Marine Ins. Co.

SWAN, District Judge.   On the 20th day of May, 1897, a collision occurred on Lake Huron between the steamers George W. Roby and

Florida, whereby the latter, with her cargo, was sunk and became a total loss. The Florida at the time of her loss was running under a season charter to the Lackawanna Transportation Company, which engaged during said season to "man, use, and navigate the said vessel at its own expense, and for its sole use and benefit." A libel was filed by the owner of the Florida to recover damages for loss of the vessel and her cargo; also, for loss of seamen's effects, etc.; and a cross libel was filed by the owners of the George W. Roby, who subsequently filed their petition for limitation of liability. On the hearing both vessels were held in fault, and damages ordered to be divided, and a reference was made to the commissioner to ascertain and report the same. In the proceedings for limitation of the liability the Roby was appraised and bonded in the sum of $59,300. The claims proved against her in those proceedings were as follows: (1) The claim of the British & Foreign Marine Insurance Company as underwriters upon the cargo of the Florida, amounting to the sum of $65,293.33, including interest to the date of the commissioner's report, which was filed August 28, 1899. (2) The claim of Peter P. Miller et al. as trustees of that part of the cargo of the Florida not insured by the British & Foreign Marine Insurance Company, amounting to the sum of $6,026.71, including interest as aforesaid. (3) The claim of Peter P. Miller et al. as trustees of the effects of the officers and the crew of the Florida, amounting to the sum of $1,462.79, including interest as aforesaid. (4) The claim of Peter P. Miller et al. as owners of the propeller Florida, amounting to the sum of $45,- 596.56, including interest to the date of the report as aforesaid; said sum being one-half of the value of said steamer with interest as aforesaid. (5) The claim of Peter P. Miller et al., owners of the Florida, for the loss of the unexpired term of the charter for the steamer for the season of 1897, viz. the sum of $13,889.52.

The aggregate of the claims proved and allowed by said commissioner's report is the sum of $118,379.39,—about twice the appraised value of the Roby. The main question presented by the commissioner's report and exceptions thereto, and the motion of the owners of the Florida and that of the insurance company for decrees in their favor, respectively, arises upon the division of the funds represented by the stipulation given for the appraised value of the Roby,—whether that fund shall be apportioned ratably between the injured parties, or whether the claim of the cargo owners shall be preferred to that of the owners of the Florida, or vice versa. It is contended on behalf of the Florida that the claim of her owners ranks that of the cargo owners, by reason of the operation of the Harter act, so-called, and must be paid in full before that paid for the cargo. Both vessels being held in fault for the collision, the cargo owners, being blameless, contend for priority of their claim. The exact question here presented has not been expressly decided in any reported case. In the case of The Chattahoochee, 173 U. S. 540, 19 Sup. Ct. 491, 43 L. Ed. 801, which resembles the case at bar in some particulars, and is claimed to be decisive here, the facts were substantially as follows: The Chattahoochee collided with the schooner Golden Rule, which, with her cargo, was sunk and became a total loss. The dis-

trict court found both vessels in fault, and entered a decree against the steamer for $17,215.17,—the full value of the sunken cargo and the effects of a passenger. The damages by reason of the loss of the schooner and the effects of her crew were $18,410.90, for one-half of which, viz. $9,205.45, the steamer was held liable; but her owners were allowed to recoup from that sum $8,607.58, which was one-half of the value of the cargo. Holding that the schooner was entitled to the benefit of the Harter act, the supreme court said, in an opinion by Mr. Justice Brown:

"It was held by this court in the case of The Atlas, 93 U. S. 302, 23 L. Ed. 863, that an innocent owner of a cargo is not bound to pursue both colliding vessels, though both may be in fault, but is entitled to a decree against one alone for the entire damages. It was held by the courts below that, while the action of the owner of the cargo would lie against the steamer for her full amount of damage done, the owners of such steamer were entitled to recoup one-half of this amount against one-half of the amount awarded to the owners of the schooner for the loss of their vessel, upon the theory that under the limited liability act they were liable for one-half of this amount, not exceeding the value of the schooner. * * * We are of opinion that the court of appeals did not err in deducting one-half of the value of the cargo from one-half the value of the sunken schooner, and in limiting a recovery to the difference between those values."

This was the point of the decision. The recoupment was obviously allowed, not as a liability of the schooner to the cargo owners, but in satisfaction of the claim of the owners of the steamer against the schooner for one-half the total damages, "because when both vessels are in fault there arises a liability of one party to pay the other such sum as is necessary to equalize the burden." The North Star, 106 U. S. 22, 1 Sup. Ct. 41, 27 L. Ed. 91. No question of priority, as between the owners of the schooner and the owners of the cargo, was contested or passed upon by the court. The Chattahoochee, as one of the two wrongdoers, was liable to the cargo owners for all the damages suffered by the cargo, which, of course, was innocent of fault. Under the Harter act the schooner was exempt from liability for the loss or injury of her cargo, although her relations to the Chattahoochee were unaffected by that act. The remedy, therefore, of the cargo owner, whether the suit was brought in his own name, or by the owners of the vessel as trustee for him, was against the steamer solely; and his right to recover his entire damages was unquestionable, under The Atlas, 93 U. S. 302, 23 L. Ed. 863, The Beaconsfield, 158 U. S. 303, 15 Sup. Ct. 860, 39 L. Ed. 993, and The New York, 175 U. S. 187, 20 Sup. Ct. 67, Adv. S. U. S. 67, 44 L. Ed. ——. In whatever name such suit was brought, the remedy against the wrongdoer proceeded against could not be affected, or the amount of recovery impaired, by any defense arising out of the contract of carriage with the schooner. It is equally clear that in a suit for collision the rule of mutual liability when both vessels are in fault cannot be defeated by the contract of affreightment of their respective cargoes. Neither may be liable to her own cargo, yet each is answerable for one-half the damages resulting from the collision, notwithstanding. The Albert Dumois (Oct. term, 1899) 20 Sup. Ct. 295, Adv. S. U. S. 295, 44 L. Ed. ——.

IN RE LAKELAND TRANSP. CO.

In the case at bar the mutual liability is conceded, but, as the appraised value of the Roby is not enough to meet even the claim of the cargo owners alone, the question is squarely presented, which constitutes a preferred lien upon the stipulation given for the appraised value of the Roby,—the claim for loss of cargo, or that for the loss of the Florida? Further questions arise upon the subrogation clause in the bill of lading: The status of the claim for the freight pending upon the cargo of the Florida at the time of her loss; that of the claim of the owners of the Florida for the loss of the unexpired term of the charter for the season; and the rank which should be accorded the claim for the loss of the seamen's effects. In Norwich Co. v. Wright, 13 Wall. 122, 20 L. Ed. 585, in proceedings had for limitation of liability by the owners of the steamer City of Norwich, which had been held solely at fault for a collision with a vessel, and decreed to respond therefor and for the cargo, and was also sued for damages and loss to her cargo, which was also greatly injured, it being alleged that the total damage claimed against the steamer would exceed her value, the court said:

"But the claim of the libelants alone is not alleged to be greater than the value of the steamer and her freight. The libelants, therefore, would be entitled to receive the whole amount of this damage, if they were the only persons who sustained damage, or if, by reason of the nature of their claim, their lien was superior to that of the owners of the cargo lost on the steamer. Liens for reparation for wrong done are superior to any prior liens for money borrowed, wages, pilotage, etc., but they stand on an equality with regard to each other if they arise from the same cause. We think, therefore, that the lien of the libelants for the loss of the schooner and her cargo arising from the collision is on an equality with the lien for the loss of the cargo of the steamer from the same cause. MacL. Shipp. 598."

It is to be noted that this refers to a case where the steamer alone was in fault. If this rule should govern all cases, without regard to circumstances, the main question would be easy of solution, and the decree should be that the contestants for this fund should share it pro rata. It is recognized equity, however, that the claim of an injured party wholly innocent of fault or dereliction resulting in a loss should be more favorably regarded than that of a creditor against the same fund whose negligence aided to cause the loss. Such a case would present an exception to the general rule of pro rata division among sufferers by a common disaster, and that rule should be limited to cases where all the parties seeking reparation are equally innocent of fault, unless statutory or judicial authority has otherwise determined. The argument for the Florida that the postponement of her owners' claim against the Roby to that of her cargo owners is in contravention of the Harter act is untenable. The decisions upon that act clearly confine its operation to the relations between a carrying vessel and her cargo. It evinces no purpose to classify claims against a wrongdoer, or to depart from the well-settled equitable principles of distribution between competitors for the same fund which had always been followed in courts of admiralty. In The Delaware, 161 U. S. 471, 16 Sup. Ct. 516, 40 L. Ed. 771, Mr. Justice Brown, construing the act, says:

"It is entirely clear, however, that the whole object of the act is to modify the relations previously existing between the vessel and her cargo. This is

apparent, not only from the title of the act, but from its general tenor and provisions, which were evidently designed· to fix the relations between the cargo and the vessel, and to prohibit contracts restricting the liability of the vessel and owners in certain particulars connected with the construction, repair, and outfit of the vessel, and the care and delivery of the cargo." Page 474, 161 U. S., page 522, 16 Sup. Ct., and page 776, 40 L. Ed.

In The Chattahoochee, supra, Mr. Justice Brown says:

"It would seem to follow [from The North Star, 106 U. S. 17, 1 Sup. Ct. 41, 27 L. Ed. 91] that the sunken vessel is not entitled to the benefit of any statute tending to lessen its liability to the other vessel, or to an increase of the burden of such vessel until the amount of such liability has been fixed upon the principle of an equal division of damages. This is, in effect, extending the doctrine of The Delaware case, wherein the question of liability for the loss of the cargo was not in issue, to one where the vessel suffering the greater injury is also the carrier of a cargo. In other words, if the Harter act was not intended to increase the liability of one vessel towards the other in a collision case, the relations of the two colliding vessels to each other remain unaffected by this act, notwithstanding one or both of such vessels be laden with a cargo."

In The Irrawaddy, 171 U. S. 187, 18 Sup. Ct. 831, 43 L. Ed. 130, the court rejected the claim of the owners of the steamer Irrawaddy for general average contribution from the cargo to the expenses necessitated by the negligent stranding of the vessel, holding that the provisions of the Harter act did not sanction its allowance; and after reviewing the law as it stood before that act, by which the vessel was liable for all the damages and expenses caused by negligence, the opinion sums up the construction of the act as follows:

"Upon the whole, we think that, in determining the effect of this statute in restricting the operation of general and well-settled principles, our proper course is to treat those principles as still existing, and to limit the relief from their operation, afforded by the statute, to that called for by the language itself of the statute."

There is nothing, therefore, in the Harter act to sustain the claim of the Florida owners for priority over that of the cargo owners. The claim is equally opposed to the spirit and usage of the admiralty and maritime law of the United States. That law assumes that the cargo owner is free from fault in collision cases, and allows him to recover the entire damages,—a moiety from each of the offending vessels, if each is able to respond for its quota thereof, with a right to resort to the other vessel for any deficiency arising from the inability of the other to pay her due share. "* * * It would seem to be just·that the owner of the cargo, who is supposed to be free from fault, should recover the damage done thereto from those who caused it; and, if he cannot recover from either of them such party's due share, he ought to be able to recover it from the other. * * * He [the cargo owner]·ought not to suffer loss by the desire of the court to do justice between the wrongdoers. In short, the moiety rule has been adopted for a better distribution of justice between mutual wrongdoers, and it is not to be extended so as to inflict positive loss on innocent parties." The Alabama and The Gamecock, 92 U. S. 696, 697, 23 L. Ed. 763. In the application of the moiety rule to cases of mutual fault, it is said in The Atlas, 93 U. S. 318–320, 23 L. Ed. 863:

"* * * The court never intended to adopt a theory which would fail to give innocent parties full compensation suffered by the collision, * * * and never meant to extend the moiety rule so as to do injustice to an innocent tow or the owner of the cargo. * * * Innocence entitles the owner to full compensation from the wrongdoer, and it is a good defense against all claims from those who have lost."

In the case at bar, because of the insufficiency of the fund, and doubtless in very many cases for a like reason, preferring the claim of the vessel owner to that of the cargo would deprive the latter of all compensation. The carrying vessel being absolved by the statute from liability to her cargo, if the latter's claim against the Roby is postponed to that of the Florida the cargo owner is left remediless, notwithstanding his carrier's agency in causing the loss. This result is plainly inequitable and contrary to the spirit and usage of the maritime law, and, as has been pointed out, the Harter act contains nothing to sanction a discrimination so unjust. The statutory exemption to the carrier is purely negative. It shields him against the cargo's claim, but does not advance his rank as a claimant for reparation against his co-wrongdoer, or even give him equality with the cargo owner. This is the rationale of the decision of The Irrawaddy, supra. The equity of contribution in general average for expenses incurred for the common benefit of vessel and cargo, occasioned by a peril for which the carrier is not answerable, is stronger than that of a joint wrongdoer to absorb, or even share pro rata with an innocent party in, the only fund to which recourse can be had for compensation. It results that the cargo owner, where both vessels are at fault, is the superior lienor against the fund available for reparation, unless by the contract of carriage and the supervening disaster, or by contract with insurers, another has been substituted to his right.

Are the owners of the Florida entitled to be subrogated to the claims of the cargo owners against their insurers by the provisions of the bills of lading? Shipments Nos. 2, 4, 6, 8, and 9, allowed to the intervener the British Marine Insurance Company by the commissioner's report at $11,665.69 and interest, were made under bills of lading containing the following agreement:

"Any carrier by water, liable on account of loss or of damage to any of said property, shall have full benefit of any insurance that may have been effected upon, or on account of, said property."

Shipment No. 3, allowed intervener at $137.25, was covered by a bill of lading containing the following clause:

"In case of loss or damage of any of the property named in this bill of lading for which this company may be liable, it is agreed and understood that this company may have the benefit of any insurance effected by or on account of the owner of said property."

The total of the above shipments is $11,802.84. The right is asserted on behalf of the Florida to have this sum, at least, deducted from intervener's claim of $57,697.50, under the clauses above given from the bills of lading. This claim is made on two grounds: (1) That, to the extent that the claim of the owners of the Florida against the Roby is diminished by preferring the claim of the shippers, the Florida is pro tanto necessarily held responsible for damage or loss

resulting from faults or errors in navigation or in the management of the said vessel, and is "held liable for losses arising from the dangers of the sea or other navigable waters"; (2) under the "benefit of insurance" clause in the bills of lading. The second of these propositions is asserted as a corollary from the first.

1. The first of these propositions is fallacious. The argument erroneously assumes that the fund secured by the Roby's stipulation for value was constituted primarily for the satisfaction of damages suffered by the libelants, and the interests other than the cargo which they represent, and that any payment made therefrom for cargo damage is in effect taken from libelants. By general admiralty rule 55, relating to proceedings for limitation of liability, "the moneys paid or secured to be paid into court * * * or the proceeds of said ship or vessel and freight (after payment of costs and expenses) shall be divided pro rata amongst the several claimants in proportion to the amount of their respective claims duly proved and confirmed as aforesaid: saving, however, to all parties any priority to which they may be legally entitled." The stipulation given for the Roby is impressed with the same rights, and is to be distributed in the same manner among claimants against that steamer as the proceeds of her sale in the registry of the court would be in an ordinary suit in admiralty under an order of confirmation, viz. according to the rank of the claims decreed to be paid. In such proceedings payment of the claims of preferred creditors cannot be said to defeat or diminish those of inferior rank, although the preferred claims may exhaust the fund. The holder of an inferior lien has no interest in the fund until prior liens thereon have been satisfied. When that is done, his interest begins. Until then, payments of preferred claims do not affect his security. The payment for cargo damage exacted from the surviving wrongdoer is based on the tort of that wrongdoer solely. The fact that the cargo owner's priority exhausts the fund, and prevents redress therefrom to other sufferers by the collision, is the misfortune of the inferior creditors, but is in no sense payment by them, or either of them, of the cargo loss.

2. The validity of stipulations in the bill of lading giving the carrier, when liable for the loss of the goods, the benefit of any insurance upon them, is well settled. Liverpool & G. W. S. S. Co. v. Phœnix Ins. Co., 129 U. S. 464, 9 Sup. Ct. 469, 32 L. Ed. 788. But says Mr. Justice Gray in that case:

"It behooves a carrier setting up such a defense to show clearly that the insurance on the goods is one which by the terms of his contract he is entitled to the benefit of. Inman v. Railway Co., 129 U. S. 128, 9 Sup. Ct. 249, 32 L. Ed. 612."

As the Florida is not held liable on account of loss or damage to any of the property covered by the bill of lading, the "benefit of insurance clause" does not subrogate her owners to the right of the cargo owners against their insurers. This proceeding is not prosecuted against the Florida or her owners, but against the owners of the Roby, in the limited liability proceedings instituted by the latter, to recover damages done to the cargo of the Florida. It is also evident that the owners of the Florida cannot claim an exemption

from liability to the cargo under the Harter act, and at the same time claim to have the benefit of the insurance upon the cargo. The carrier cannot claim the benefit of the insurance upon the cargo unless he has paid or incurred a legal liability for its loss, or the damage thereto. Inman v. Railway Co., supra.

3. It is also insisted by the owners of the Florida that the commissioner erred in rejecting their claim for compensation for the loss of the unexpired term of the charter under which the Florida was running when lost, viz. the sum of $13,889.52. The commissioner held that "this claim should not be considered or allowed in this suit as part of the damages recoverable by said owners, inasmuch as said propeller was totally lost by reason of said collision, and her full value, with interest thereon, has been awarded to said owners." In this ruling the commissioner followed the view he had expressed upon a like claim made in the case of The North Star (D. C.) 44 Fed. 492–494, which was approved by Judge Brown. The reasons given by the commissioner are those expressed by Judge Thomas in the case of The Hamilton (D. C.) 95 Fed. 844. The decree in The North Star was affirmed in 10 C. C. A. 262, 62 Fed. 71; this question being, however, passed sub silentio. In The Umbria, 166 U. S. 404, 17 Sup. Ct. 610, 41 L. Ed. 1053, Mr. Justice Brown, who delivered the opinion of the court, thus reiterates and expands what he had said in The North Star (D. C.) 44 Fed. 496:

"In cases of a partial loss there is no injustice in allowing the probable profits of a charter for the short time during which the vessel is laid up for repairs, but in case of a total loss the recovery of such profits is limited to the voyage which the vessel is then performing, since, if the owners were entitled to recover the profits of a future voyage or charter, there would seem to be no limit to such right, so far as respects the time of its continuance; and, if the vessel was under a charter which had months and years to run, the allowance of the probable profits of such charter might work a great practical injustice to the owners of the vessel causing the injury."

It may be added that in cases of partial loss, requiring detention for repairs, the owner is deprived of the probable earnings of his vessel during such detention, while in case of a total loss, in general, the deprivation of the earning capacity of the vessel is compensated by the award of her market value, which will enable her owner to purchase a vessel equally profitable. A possible or even an actual decline in freight rates or in the charter value of a like vessel is rather a vicissitude of the business of marine transportation, than a calculable element of probable damages. An advance in such rates or in the charter value of the vessel would redound to the advantage of the ship owner, whose decree has given him the means of obtaining a vessel of equal value and capacity unfettered by a charter, and free to contract for the higher rates. Either contingency should not affect the compensation to be made for a lost vessel, because it is speculative and uncertain. Again, if the owner is allowed the market value of his vessel and the probable profits of his charter, he may purchase another equally profitable vessel, and thus double his gain for the unexpired term of his charter. The great weight of American authority is against the rule of damages adopted in the case of The Freddie L. Porter (C. C.) 8 Fed. 170,

where damages were allowed for the unexpired term of the charter. The exception to the commissioner's report based on the disallowance of this item of damages is overruled.

4. The claims of the officers and the crew of the Florida for lost effects are also subordinate to those of the cargo owners. The negligence of the Florida is so far imputed to her officers and crew that they can recover but half their damages against the other wrongdoer. Each member of a crew takes the risk of the others' negligence, as all are fellow servants. The Queen (D. C.) 40 Fed. 694; Killien v. Hyde (D. C.) 63 Fed. 172–176; The Niagara (D. C.) 77 Fed. 336; Hedley v. Steamship Co. [1892] Q. B. Div. 58, [1894] App. Cas. 222. If the Florida had been blameless, her owners, officers, and crew would have ranked with the owners of her cargo in the distribution of the proceeds of the Roby; but, they being tainted with the fault of their vessel, their claim must yield priority to that of the innocent cargo owners.

5. Libelants make claim for loss of freight on the Florida's cargo pending at the time of the collision, viz. the sum of $1,283.05. The Florida was running under charter to the Lackawanna Transportation Company. The libel enumerates as one of the elements of libelants' damages arising out of the collision the loss of this freight. No objection was made before the commissioner as to libelants' right to recover this sum as trustees for the charterer, nor was any exception filed to the allowance of one-half the sum as part of libelants damage. It is objected here that libelants bear no such relation to the charter as entitled them to sue for this sum, even as trustees, and that suit therefor should have been brought in the name of the charterer. The litigation has apparently proceeded on the theory that the libelants were entitled to prove this item in the capacity of trustees, and its exclusion at this time would deprive the charterer of redress if the appraised value of the Roby were sufficient to pay it after satisfaction of prior claims. The question, however, is not important, as the claim of the charterer is inferior to that of the cargo owner, which will absorb the fund. The charterer had possession and control of the vessel, and was owner pro hac vice; and its servant, the master of the Florida, was guilty of fault for which that steamer was condemned. Thorp v. Hammond, 12 Wall. 408–416, 20 L. Ed. 419. The charterer's claim is therefore of the same class as that of the general owners.

The exceptions of the owners of the Florida to the report of the commissioner are overruled, and a decree will be entered, in accordance with the opinion, awarding priority to the owners of the Florida's cargo in the fund represented by the stipulation given for the Roby, and directing that their claims be first paid therefrom.