## THE LIVINGSTONE.

### (District Court, W. D. New York. October 8, 1900.)

#### No. 3,664.

1. ADMIRALTY — CONSTRUCTION AND EFFECT OF STIPULATION FOR RELEASE OF VESSEL—CLAIMS OF INTERVENERS.

A bond or stipulation given for the release of a vessel libeled in a suit for collision, brought jointly by the owner of the vessel sunk and the owner and bailee of her cargo, which runs to the libelants jointly and severally and to their and each of their successors and assigns, and is conditioned that the claimant of the vessel shall abide and answer the decree of the court in the cause, is not a mere personal security given to the libelants individually, but stands as well for the payment of any sums which may be decreed in favor of cargo insurers who have paid the loss thereon, and have intervened in the cause by leave of court claiming to be subrogated to the rights of one of the libelants who sued in behalf of all the cargo owners.

2. COLLISION—CHARTERER AS OWNER FOR VOYAGE—EFFECT OF VESSEL'S FAULT.

The charterer of a vessel for the season for a fixed sum, who pays all the expenses, and has full control, management, and charge of her navigation, becomes the owner for the voyages made during the term of the charter; and where the vessel, during such a voyage, has been sunk, with her cargo, in a collision for which the two vessels have been held equally in fault, he is affected by her contributory fault, and is entitled to recover against the other vessel but one-half the loss sustained by him as a cargo owner.

3. SAME—INTERVENTION BY INSURER—RIGHTS BY SUBROGATION.

An insurer of a portion of the cargo of a vessel sunk in collision, who has paid the loss and intervened in a suit to recover damages for the collision brought by the owners of the vessel and cargo, seeking to hold the respondent vessel solely liable for his loss, is subrogated only to the rights of his insured; and where the insured, as charterer and owner for the voyage, is affected by the contributory fault of the vessel, and entitled to recover from the respondent vessel but one-half his cargo loss, the insurer is likewise restricted in his recovery; but an insurer of a portion of the cargo owned by an innocent shipper, although his loss was sued for by the charterer as bailee, is not so affected, and, the insured in such case having the right at his election to hold either vessel liable for his entire loss, the intervener succeeds to the same right.

4. ADMIRALTY — RECOUPMENT FROM DAMAGES FOR COLLISION — NECESSITY OF CROSS LIBEL.

In a suit for collision, brought by the owner of one of the vessels, which was sunk, and the owners of her cargo, against the other vessel, in which

the two vessels were held equally in fault, and the recovery of the libelant vessel owner restricted to one-half his loss, but full recovery was decreed against the respondent vessel for the losses sustained by innocent cargo owners, where all the parties in interest were before the court, and participated in all the controversies arising in the suit, the failure of the libeled vessel to file a cross libel, and have process thereon issued and served as permitted by admiralty rule 59, will not preclude it from recouping from the amount awarded against it in favor of the other vessel one-half the loss of the innocent cargo owners, which it is required to pay in full.

On Motion for Decree and Exceptions to Commissioner's Report.

Harvey D. Goulder, for libelants.
William B. Cady, for interveners.
C. E. Kremer, F. H. Canfield, and Harvey L. Brown, for respondents.

HAZEL, District Judge. This is a cause of collision between the steamer Grand Traverse, owned by the Lackawanna Transportation Company, and the steamer Livingstone, owned by the Michigan Navigation Company. Both steamers were found in equal fault, and an interlocutory decree was rendered on January 3, 1899, that the loss and damage accruing to the steamers Livingstone and Grand Traverse, respectively, be apportioned between them in equal moieties. The Livingstone, 87 Fed. 769. The libel was filed by the Lackawanna Transportation Company, owner of the Grand Traverse, and by the Delaware, Lackawanna & Western Railroad Company as owner of 679 gross tons of nut coal and as bailee in divers other merchandise shipped upon the said propeller Grand Traverse. The Grand Traverse was chartered by the Delaware, Lackawanna & Western Railroad Company for the season of navigation on the Great Lakes for 1896. The libel upon which the suit is based was filed in the joint names of the Lackawanna Transportation Company and Delaware, Lackawanna & Western Railroad Company, and a joint right of recovery is averred therein. The Livingstone was seized under this libel, and was bonded by the Fidelity & Deposit Company of Maryland as surety. The bond runs to the libelants above named jointly and severally in the sum of $75,250, to be paid to the said libelants, their and each of their successors or assigns, and conditioned that, if the claimant of the Livingstone shall well and truly abide and answer the decree of the court in said cause of libel without fraud or other delay, then the obligation to be void. The answer of the Livingstone to the libel denies fault on her part, and avers that the collision was caused wholly on account of the fault, negligence, and improper navigation of the Grand Traverse. The answer also alleges that the Livingstone suffered damages to the extent of $6,850, which constitutes an enforceable lien against the Grand Traverse, and prays that the libel in the cause may be dismissed, and that such other and further order may be made as will protect the just rights of the respondent. After issue was joined, the Indemnity Mutual Marine Assurance Company, Limited, of London, England, filed its petition setting forth

that it was the insurer of 679 gross tons of nut coal shipped by the Delaware, Lackawanna & Western Railroad Company, and consigned to said Delaware, Lackawanna & Western Railroad Company; that the insurance on coal was against all perils that should come to the damage of said property; that the coal was totally lost, and was abandoned to the petitioner, the insurance company, and the amount insured thereon was paid by the insurance company to the consignee, the Delaware, Lackawanna & Western Railroad Company, and it thereby "became subrogated to the rights of the libelant the Delaware, Lackawanna & Western Railroad Company, as owner of the coal, against any vessel or person whomsoever on account of the injury and damage resulting to said coal by reason of the collision." The petitioner prays that it be allowed to intervene and prosecute its claim against the Livingstone and the sureties upon the bond or stipulation filed in the cause, and the court is asked by the petition to "decree that the claimant of the Livingstone and the sureties upon its bond pay to your petitioner the loss and damage sustained, with interest." An order was accordingly made permitting the petitioner to intervene, and in due time the Livingstone, as required by the order, made answer to the petition, denying, among other things, that she was in fault for the collision, and denying that the Indemnity Mutual Marine Assurance Company has a claim against the owner of the propeller Livingstone and the sureties on the bond and stipulation filed in the cause. After the entry of the interlocutory decree finding both steamers in fault, the Union Marine Insurance Company, Limited, of Liverpool, England, also petitioned to be allowed to intervene as insurers of certain cargo of the steamer Grand Traverse, shipped via the Lackawanna Transportation Company, and consigned to Johannes Bros., of Green Bay, Wis. It alleges that said last-mentioned merchandise was insured in the sum of $813, and that said merchandise was at the time of the collision of the two steamers lost and destroyed; that on payment of the insurance the merchandise was abandoned to the last-named insurance company by the shippers and consignee, and that by the terms and conditions of the policy it became subrogated to the rights of said shippers and consignee against any vessel or person whomsoever on account of the injury and damage resulting to said merchandise by reason of said collision. To this petition the claimants of the Livingstone also made answer denying liability. The interlocutory decree, after finding that both steamers were at fault in bringing about the collision between the said steamers, respectively, and that the loss and damage occurring to said steamers be apportioned between them in equal moieties, decreed further that the question of the amount of damages sustained by said vessels on account of the collision, as well as to the cargo of the steamer Grand Traverse, be referred to a commissioner to take proof respecting said damage, and ascertain and report the amount thereof, together with such proofs, to the court; and that all questions as to the liability of said steamers for the loss and damage resulting from said collision to the cargo of the steamer Grand Traverse be reserved by the court for further consideration until the

coming in of the report of the commissioner and the entry of the final decree in the case. Pursuant to the decretal order, the commissioner reported to the court that the parties to the cause entered into a stipulation authorizing and directing him, as such commissioner, to report the damage to libelants by reason of the loss of the Grand Traverse at $37,500, and he does so report accordingly, with interest from the date of the collision, October 19, 1896, amounting to $45,316.17. As to the claim made by the owners of the Livingstone for the loss and damage sustained by that vessel, the commissioner found from a written admission signed by proctors for libelants and for respondent, and from the evidence before him in regard to certain disputed items, that the damage sustained by the Livingstone, with interest, amounts to $7,815.16. As to the claim made by the intervening underwriters on cargo of the Grand Traverse, based on the stipulation of proctors for libelants and for respondents, he finds the damages sustained by them to be as follows: The Indemnity Mutual Marine Assurance Company, Limited, of London, England, the insurer of the coal, with interest, $4,284.60; the Union Marine Insurance Company, Limited, of Liverpool, England, the insurers of merchandise consigned to Johannes Bros., with interest, $955.41. As to the claim for personal effects of the master and crew of the steamer Grand Traverse he finds that their recovery against the Livingstone is limited to one-half of the value in each case of personal effects lost, amounting to $402.99, including interest. In each case interest is computed from the date of the collision at 6 per cent., except as to the claims of the interveners, in whose behalf the computation of interest is from the time of payment by the interveners of the cargo damages. The claimant of the Livingstone, the Michigan Navigation Company, excepts to the report of the commissioner, and the question now to be considered arises upon the exceptions to the commissioner's report.

It is insisted: First. That the claims for the cargo should be disallowed, because the libel upon which the suit is based was filed in the joint names of the Lackawanna Transportation Company and the Delaware, Lackawanna & Western Railroad Company, and, a joint right of recovery being averred therein, and no new bond having been filed to answer the interveners' claim, the surety cannot be held liable on the bond in the case, as it simply runs to the joint libelants; that the bond obligates the surety company to answer to any claim which the libelants, to whom the bond was given, may establish in this suit, and does not obligate the surety company to answer to the claim of any other person or company. Second. If the underwriters have a right to intervene in the cause, that then they are entitled to recover only one-half of the value of the cargo. Third. If the respondent the Michigan Navigation Company or its surety is liable on account of the cargo loss, it is entitled to recoup one-half the amount over whatever may be allowed to libelants as owners of the Grand Traverse. I cannot accept the interpretation of the office of a bond or stipulation given in admiralty suits insisted on by the respondent. The bond runs to the Lackawanna Transporta-

tion Company and the Delaware, Lackawanna & Western Railroad Company, and to each of their successors or assigns. The purpose of the bond was to release the Livingstone from arrest, and the condition of the bond is that the claimant of the ship arrested shall well and truly abide and answer the decree of the court in the cause, without fraud or other delay. The bond was given not only to the libelants in behalf of themselves, but was given to the Lackawanna Transportation Company, as owner of the Grand Traverse, and the Delaware, Lackawanna & Western Railroad Company, cargo owners, or as trustee or bailee, for the owners of portions of the cargo with which the Grand Traverse was laden at the time of the collision. The interveners were made parties in interest, so far as the cargo is concerned, and became subrogated to the rights and remedies of the owners of the cargo or of the trustee or bailee for portions of the cargo, and the entire proceeding of the interveners was to recover against the bond theretofore given to answer to the claim for cargo loss. The respondent made answer to the interveners, contesting the claim for cargo damages and denying that it was at fault for the collision. The cause of action did not change. The insurance companies simply became parties to the suit, as they had a right, under general admiralty rules Nos. 34 and 43; and upon payment of the insurance to the owners of the cargo became subrogated to the rights of the owners of the cargo, and were put in place of one of the libelants, thereby obtaining all the rights of the party for whom they were subrogated. The Monticello, 17 How. 156, 15 L. Ed. 68; The Potomac, 105 U. S. 634, 26 L. Ed. 1194; The Liberty No. 4 (D. C.) 7 Fed. 230. The parties who really sustained the cargo loss were substituted in place of the owner of the coal and bailee for other portions of the cargo. The liability of the surety was not increased or diminished, and subrogation to the rights of cargo owners will not affect the stipulation as against the sureties. The sureties are bound to well and truly abide and answer to the decree of the court without fraud or delay. The Beaconsfield, 158 U. S. 303, 15 Sup. Ct. 860, 39 L. Ed. 993; The Nied Elwin, 1 Dod. 50. In the Nied Elwin, supra, the court said:

"I cannot entirely accede to the position which has been laid down in behalf of the claimant that these bonds are mere personal security given to the individual captor, because I think they are given to the court as securities to abide the adjudication of all facts at the time impending before it. The court is not in the habit of considering the effect of bonds precisely in the same limited way as they are viewed by the courts of common law. * * * In this place they are subject to more enlarged considerations. They are here regarded as pledges or substitutes for the thing itself in all points fairly in the adjudication before the court."

The cases of The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943, and The T. W. Snook (D. C.) 51 Fed. 244, are not at variance with this ruling. In the case first cited it was attempted to enlarge the liability of the stipulators by the inclusion of claims other than the ones which the stipulators agreed to pay. The court said:

"The stipulators may be so well satisfied that the claimant has a defense to the original libel as to be willing to take upon themselves the contingency of

a decree requiring its payment, but they may neither know nor be able to conjecture what other demands may be made against the property."

Nor is the case of The T. W. Snook, supra, applicable to the facts of this case. Here the stipulators had notice of the interveners' claims, and the respondents disputed their right of recovery. Afterwards, by stipulation entered into by proctors for all parties, it was agreed that the interveners were insurers upon certain cargo lost upon the propeller Grand Traverse on account of the collision which occurred between the two steamers, and that portions of said lost cargo were the property of certain shippers, whose interests were covered and protected under certain policies of marine insurance underwritten by the intervening companies. The amount of money which the underwriters paid to the owners of the cargo was also stipulated by proctors for respondents and for libelants, and reference was had in said stipulation to marine receipts, bills of lading, and proofs of loss, showing the interest of the interveners. Obviously, the respondents must now be precluded or estopped from asserting that the sureties are not liable to the interveners on the bond. The Delaware, Lackawanna & Western Railroad Company was the owner of a portion of the cargo, and also represented innocent parties. It is well settled (The New York, 175 U. S. 209, 20 Sup. Ct. 75, 44 L. Ed. 135; The Atlas, 93 U. S. 302, 23 L. Ed. 863) that "a plaintiff who has suffered a loss by the negligence of two parties was at liberty, both at common law and in admiralty, to sue both wrongdoers or either one of them, at his election." And the court in The New York, supra, reaffirming the principle laid down in The Atlas, said:

"It is equally clear that, if he [the plaintiff] did not contribute to the disaster, he is entitled to judgment in either case for the full amount of his loss. He may proceed against all the wrongdoers jointly, or he may sue them all, or any one of them separately. * * * Co-wrongdoers. not parties to the suit, cannot be decreed to pay any portion of the damage adjudged to the libelant; nor is it a question in this cause whether the party served may have process to compel the other wrongdoers to appear and respond to the alleged wrongful act."

In this case the interveners elected to proceed against the Livingstone, and to hold her solely liable for the cargo loss; but it is insisted that the interveners are entitled to recover only one-half the value of the cargo because of the fact that the railroad company was engaged in the navigation of the steamer either as charterer or as owner pro hac vice, and contributed to the disaster, and that, where a collision occurs through the mutual fault of both vessels, the entire damage resulting therefrom is to be divided between the two vessels. The evidence established that the Grand Traverse was chartered for the entire season of navigation of 1896 by her owner, the Lackawanna Transportation Company, to the Delaware, Lackawanna & Western Railroad Company, for the sum of $12,000. The owner was to keep the vessel in condition and pay the insurance on her. In the years 1887 and 1888 the railroad company owned the vessel, but in the following year she was transferred to the Lackawanna Transportation Company, and each season thereafter was chartered by the railroad

company for a fixed sum, the railroad company paying the expenses for running the vessel. The superintendent of the Lackawanna Transportation Company was also the superintendent or manager of the owner of the steamer Grand Traverse, and the transportation company acted as agent for the railroad company in its business of carrying freight on the Great Lakes. It seems to me clear that the intention of the vessel owner and charterer was that the charterer should have possession, control, management, and navigation of the ship, and therefore must be considered as owner for the voyage. Marcardier v. Insurance Co., 8 Cranch, 40, 3 L. Ed. 481; Leary v. U. S., 81 U. S. 607, 20 L. Ed. 756. The master of the Grand Traverse was guilty of fault for which that steamer was condemned by a decree of this court. Thorp v. Hammond, 12 Wall. 408, 20 L. Ed. 419. The collision complained of having occurred under the management of the railroad company, which was likewise the owner of the coal cargo, how can the charterer be heard to complain that it was an innocent cargo owner, and therefore entitled to recover in full against the Livingstone? Both vessels being in fault, and the insurance company acquiring by subrogation the right only of the owners of the coal cargo owned by the libelant in charge of the navigation of the Grand Traverse at the time of the collision, the same principle, it seems to me, must be applied that exists in a case where a crew lost their effects by the collision, both vessels contributing to the collision being in fault. In such case the crew is entitled to recover only one-half their damages, and nothing from their own ship. The Queen (D. C.) 40 Fed. 694; Jakobsen v. Springer, 31 C. C. A. 315, 87 Fed. 953. It would be absurd to claim that the Delaware, Lackawanna & Western Railroad Company, owner, for the voyage, of the Grand Traverse, and in charge of her navigation, is able to recover for the entire cargo loss, of which it was the owner. It has been decreed that because of her fault in navigation the Grand Traverse contributed to the collision. No principle of law can be applied to hold that, notwithstanding her negligence, she can recover for the full amount of her own cargo loss by reason of the collision. The insurance company by subrogation obtained all the rights of the libelant for whom it was substituted against the Livingstone, and no more. The railroad company not being an innocent cargo owner, the insurance company certainly is no such stranger to the controversy as to entitle it to recover the entire cargo loss from the vessel which it proceeded against. In both The New York and The Atlas, supra, the court said: "A cargo owner is entitled to judgment for the full amount of his loss if he did not contribute to the disaster, and where the owners of the cargo are innocent of all wrong." An intervener proceeding to recover for cargo loss must come into court with clean hands. He cannot contribute to the disaster, commit a tortious act, then substitute another person in his place, and expect thereby to receive or gain an advantage, or aver a greater right than he himself possesses. In any form of remedy the insurer can take nothing by subrogation but the rights of the insured. Phœnix Ins. Co. v. Erie & W. Transp. Co., 117 U.

S. 321, 6 Sup. Ct. 750, 1176, 29 L. Ed. 873; Sheld. Subr. § 44; Railroad Co. v. Soutter, 13 Wall. 517, 20 L. Ed. 543; Wilkinson v. Babbitt, 4 Dill. 207, Fed. Cas. No. 17.688; Guckenheimer v. Angevine, 81 N. Y. 394. The doctrine of subrogation will not be applied to relieve him of the wrongful act of one under whom he claims. Boyer v. Bolender, 129 Pa. St. 324, 18 Atl. 127; Wilson v. Murray, 90 Ind. 477. Judge Story said in the case of Comegys v. Vasse, 1 Pet. 193, 7 L. Ed. 108, that:

"By the act of abandonment the insured renounces and yields up to the underwriters all his right, title, and claim to what may be saved, and leaves it to him to make the most of it for his own benefit. The underwriter then stands in the place of the insured, and becomes legally entitled to all that can be saved from destruction."

In The Potomac, 105 U. S. 630, 26 L. Ed. 1194, the court said:

"The insurers of a ship which has been run down and sunk by the fault of another ship are, upon their payment of the total loss, subrogated to the right of the insured to recover therefor against the owners of the latter vessel, and will be entitled to any damages which the insurer might have recovered from such owner."

The Chattahoochee, 173 U. S. 549, 19 Sup. Ct. 491, 43 L. Ed. 801, was held liable as one of two wrongdoers for all the damages suffered by cargo innocent of fault.

I am constrained to hold that the interest which passed to the insurer by subrogation is only that of the assured, and that the Delaware, Lackawanna & Western Railroad Company had no such right of recovery as is here pursued by the intervener the Indemnity Mutual Marine Assurance Company, Limited, of London, England. The claim for cargo loss because of the fault of the charterer is of the same class as that of the general owners. The Geo. W. Roby (D. C.) 103 Fed. 336. The recovery from the Livingstone, therefore, by the insurer of the coal cargo, can be only one-half the value of 679 gross tons of nut coal. This principle is not, however, applicable, as we have seen, to the rights of recovery of innocent cargo owners to the full amount of their damages against the Livingstone. The Union Marine Insurance Company, Limited, intervened in behalf of an innocent cargo owner who had not contributed to the disaster. Following the doctrine laid down in The Atlas, The New York, and other cases, it is entitled to recover from the Livingstone, against whom it had the right to proceed, the full amount of its cargo damage. It is insisted, however, by proctors for the Livingstone, that, if the Livingstone is liable on account of the cargo loss, or any part thereof, she is entitled to recoup one-half the amount from whatever may be allowed to the libelants, as owners of the Grand Traverse; and the court is referred to The Eleanora, 17 Blatchf. 88, Fed. Cas. No. 4,335; Leonard v. Whitwill, 10 Ben. 649, Fed. Cas. No. 8,261; The C. H. Foster (C. C.) 1 Fed. 733; Insurance Co. v. Alexandre (D. C.) 16 Fed. 279; The Canima (D. C.) 17 Fed. 271; The Hercules (D. C.) 20 Fed. 205; The Job T. Wilson (D. C.) 84 Fed. 204; Jakobsen v. Springer, 31 C. C. A. 315, 87 Fed. 948; and The

Albert Dumois, 177 U. S. 244, 20 Sup. Ct. 595, 44 L. Ed. 751,—to sustain this contention. The proctors for the libelants strenuously insist that the Livingstone is precluded from making a claim for recoupment because of her failure to plead recoupment or to file a cross libel. The pleadings in the cause consist of the original libel filed, the several petitions filed by the interveners above named against the Livingstone and the several answers of the respondents to said libel and said petitions. No cross libel was filed by the respondents, nor has the respondent, by any pleading filed in the cause, claimed to recover or recoup any sum from the libelants in personam, or any of them, or asked for any decree against any of the libelants by way of recoupment or otherwise for cargo damages. Nor has any proceeding been had under general admiralty rule No. 59 to bring any party into the suit to respond for any loss or damage to\ the cargo resulting from the collision. The principle of recoupment was undoubtedly recognized and enforced in The Eleanora, 17 Blatchf. 88, Fed. Cas. No. 4,335, and in many other cases, wherein both vessels were decreed to be in fault, and the damages not only to the respective vessels, but to the cargo, were divided between the vessels found at fault. It is insisted that since The Eleanora decision and decisions of a like nature a change has been made in the practice in collision cases by admiralty rule No. 59. By this rule it is provided that a party whose vessel is libeled for a collision, where he claims that another vessel is involved, may petition for process against such vessel or her owners to bring her or them into the cause, so that the court, having the parties before it, may dispose of the rights of all by one decree. This rule the Livingstone failed to follow, and therefore it is contended that the owner of the Grand Traverse was not before the court on the question of the cargo damages, and that she had no opportunity to interpose a defense against the claim for cargo damages; that the only issue between the two steamers was the liability for the collision of the steamers respectively, and the damages sustained by reason thereof; that the intervening petitioners elected to pursue their remedy against the Livingstone for damages sustained by reason of the cargo loss; and the Livingstone, having failed to avail herself of the remedy afforded by the rules and practice in collision cases, is estopped from claiming recoupment in the manner in which she does. The attention of the court is called to Ward v. Chamberlain, 21 How. 572, 16 L. Ed. 219; The Dove, 91 U. S. 381, 23 L. Ed. 354; Ebert v. Reuben Doud (D. C.) 3 Fed. 520; The Juniata, 93 U. S. 337, 23 L. Ed. 930; The Beaconsfield, 158 U. S. 307, 15 Sup. Ct. 860, 39 L. Ed. 993; and other cases, holding that it is the practice in courts of admiralty to institute cross libels to recover damages against the libelants, and that the parties proceeded against should file their libels or cross libels, and have them served in the usual way. It is no doubt true that by the promulgation by the supreme court of admiralty rule No. 59 it is intended to simplify and make uniform a system of proceedings and practice in collision cases. The purpose of the rule is to permit a vessel libeled to have process

against another vessel involved, or her owners, to bring her or them into the cause, so that the court, having all the parties before it, may dispose of the rights of all by one decree. The rule was adopted by the supreme court in 1883. In the case at bar the owners of both vessels contributing to the collision were before the court, the one as libelant and the other as respondent. The interveners, however, as we have seen, proceeded solely against the Livingstone, being entitled, if they did not contribute to the disaster, to recover to the full amount of their damages against the Livingstone, notwithstanding the Grand Traverse might also be in fault for the collision.

The question arises whether recoupment for cargo damages recovered against the Livingstone by the interveners can be had from the amount of damages to be paid to the Grand Traverse by the Livingstone for and on account of the damages sustained to the Grand Traverse by reason of the collision, without filing a cross libel. No affirmative decree is sought against the Grand Traverse or her owners by the respondent. No case to which my attention has been called has had the question, as applicable to this case, under consideration. After the most careful consideration, I have reached the conclusion that the controversy on this point must yield to the flexibility of procedure in admiralty courts of the United States. "The practice of this court has never been conducted on the strict rules of procedure of the common law. An endeavor always exists to determine the cause submitted to it on equitable principles, and to do so the court will sometimes disregard mere technical rules and forms, and only look to rules of natural justice." Davis v. Adams (C. C. A.) 102 Fed. 523; Ben. Adm. (3d Ed.) 190. Whenever the court deems necessary to adjust the equities of the parties, amendments to pleadings are allowed, and relief will be afforded to bring all the parties in court, so that the rights of the parties may be adjusted. I do not think this necessary. The record sufficiently shows that the owner of the Grand Traverse is before the court on all the questions in the case. Although not proceeded against by the interveners, nor cross libeled by the respondent, her owner is voluntarily on the record as waiving the failure to file cross libel. The Lackawanna Transportation Company, owner of the Grand Traverse, on the 26th day of April, 1898, and again on the 4th day of October, 1898, entered into a stipulation of record with all the others concerned as parties in the cause, whereby the interests of the interveners in the cargo of the Grand Traverse at the time of the collision, and the amount paid for insurance, the loss, the subrogation, and the value of the cargo are expressly stipulated. It has certainly assumed a position recognizing the right of the interveners to recover, and waiving any defense which the owner of the Grand Traverse might have or which it might interpose to a cross libel if any were filed. It was held that:

"Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right of opposition to such consent, if his conduct or act of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adverse claim." Dodsworth

v. Iron Works, 31 U. S. App. 292, 13 C. C. A. 552, 66 Fed. 483; Davis v. Cornwall, 35 U. S. App. 315, 15 C. C. A. 559, 68 Fed. 522.

Manifestly, the owners of the Grand Traverse are estopped from now complaining that no opportunity was afforded to defend against cargo liability, and it seems to me clear that the Livingstone may recoup one-half of the amount of recovery by the Union Marine Insurance Company, Limited, of Liverpool, England.

The findings of the commissioner in respect to the damages sustained by each of the steamers, and his findings allowing the claims of seamen for personal effects alleged to have been lost by reason of the collision, are sustained, with interest at the rate of 6 per centum, as computed by him. The proctors for the Grand Traverse consenting thereto on the argument of this case, the finding of the commissioner making an allowance to the libelants on account of supplies on the steamer Grand Traverse is disallowed. The interlocutory decree having found both steamers in fault, the Grand Traverse, being a total loss, can recover one-half her value from the Livingstone, less one-half the damages suffered by the Livingstone, as shown by the record in this case. The Indemnity Mutual Marine Assurance Company, Limited, of London, England, insurer of 679 gross tons of nut coal on board the Grand Traverse, of which the Delaware, Lackawanna & Western Railroad Company was the owner at the time of the collision, and to whose rights the insurance company was subrogated, is entitled to recover only one-half its damages from the Livingstone, with interest thereon at the rate of 6 per centum from the time of payment of the insurance to the cargo owners. The Union Marine Insurance Company, Limited, of Liverpool, England, representing innocent cargo owners, is entitled to recover full amount of its damages from the Livingstone, with interest at the rate of 6 per centum from the time of payment of the insurance to the cargo owners, but the Livingstone is entitled to recoup one-half the damages so decreed to be paid to the Union Marine Insurance Company, Limited, and deduct the same from the amount awarded to the owners of the Grand Traverse. The libelant the Lackawanna Transportation Company and the respondent or its surety must pay each one-half the costs of this action. Let a decree be entered accordingly.