## THE " POTOMAC."

1. Upon a libel in admiralty for a collision, the libellant may be allowed damages for the loss of the use of his vessel while laid up to repair the injuries thereby suffered ; and if at the time of the collision she was in no need of repair, and was engaged in and peculiarly fitted for a particular business, and her charter value cannot be otherwise satisfactorily ascertained, the average of the net profits of her trips for the season may be adopted as the measure of the allowance.
2. A vessel being insured on two-thirds of her valuation by valued policies, by which, in case the insurers should pay any loss, the assured agreed to assign to them all right to recover satisfaction from any other person; or to prosecute therefor at the charge and for account of the insurers, if requested, and that they should be entitled to such proportion of the damages recovered as the amount insured bore to the valuation in the policies, the assured filed a libel in admiralty against another vessel for damages suffered by a collision. The insurers paid the libellant two-thirds of that damage, and

released and assigned to the owners of the libelled vessel all their right in any damages growing out of the collision. It appearing that the collision was owing to the fault of both vessels, the libellant could recover only half of the damages sued for. *Held*, that one-third of the sum paid by the insurers must be deducted from the amount to be recovered.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The case is stated in the opinion of the court.

*Mr. Timothy D. Lincoln* for the appellant.

*Mr. William Wirt Howe, contra.*

MR. JUSTICE GRAY delivered the opinion of the court.

This is a libel in admiralty for collision, filed by the owner of the steamboat "Robert E. Lee" against the steamboat "Potomac." In the District Court, and in the Circuit Court on appeal, both vessels were found to have been in fault, and therefore, according to the settled rule in admiralty, affirmed and established by this court in *The Catherine* (17 How. 170), the amount of the damages to each vessel, being $19,411.27 to the "Robert E. Lee," and $7,330.52 to the "Potomac," was equally divided between the two. The Circuit Court having found and stated the facts, and stated its conclusions of law, its finding of the facts is conclusive, and the questions of law so stated upon the record are open for revision in this court upon appeal, without any bill of exceptions. Stat. Feb. 16, 1875, c. 77, 18 Stat. 315; *The S. C. Tryon, ante,* 267; *The Francis Wright, ante,* 381.

Both the questions of law presented by the record relate to the amount of the damages that the libellant is entitled to recover.

One question is as to the sum to be allowed for the detention of his vessel while repairing the injuries suffered by the collision. The rules of law governing this question are well settled, and the only difficulty is in applying them to the peculiar facts of the case.

In order to make full compensation and indemnity for what has been lost by the collision, *restitutio in integrum*, the owners of the injured vessel are entitled to recover for the loss of her use, while laid up for repairs. When there is a market price

for such use, that price is the test of the sum to be recovered. When there is no market price, evidence of the profits that she would have earned if not disabled is competent; but from the gross freight must be deducted so much as would in ordinary cases be disbursed on account of her expenses in earning it; in no event can more than the net profits be recovered by way of damages; and the burden is upon the libellant to prove the extent of the damages actually sustained by him. *Williamson* v. *Barrett*, 13 How. 101; *Sturgis* v. *Clough*, 1 Wall. 269; *The Cayuga*, 2 Benedict, 125; 7 Blatchf. 385; 14 Wall. 270; *The Gazelle*, 2 W. Rob. 279; s. c. 3 Notes of Cases, 75; *The Clarence*, 3 W. Rob. 283; s. c. 7 Notes of Cases, 579.

The report of the commissioner, which was approved in this respect by both courts below, states that the " Robert E. Lee " was engaged in a certain, permanent, and lucrative trade, making weekly trips on the Mississippi River between New Orleans and Vicksburg and intermediate ports; and states one item of the damage to her thus : " Demurrage allowed for loss of three trips in her established trade, being the profits which, according to the average of her whole business for the season, she would have realized on said trips, $7,173.48." The reason given by the Circuit Court for allowing such profits, instead of the charter value of the vessel during the time of her detention, was that " being engaged in a regular established line, and being peculiarly fitted for that line, her charter value could not be satisfactorily ascertained; and other vessels which could be procured to supply her place were not equally fitted for the service." The commissioner's report, and the deposition of the clerk of the boat, which was made part of that report, show that the amount allowed was ascertained by taking the average of the profits of the trips performed by her within six and a half months next before the collision, deducting only the expenses as ascertained at the end of each trip, and deducting nothing for insurance, or for wear and tear, or for necessary repairs at the end of the season. But as the clerk testified that she was in no need of repair at the time of the collision, and there was neither suggestion nor evidence before the commissioner that the premiums of insurance were lessened while she was laid up for repairs, a majority of the court is of opinion

that it cannot be said, as matter of law, that the sum allowed
for her detention was excessive.

The only other question argued at the bar is whether certain
sums paid to the libellant by underwriters on his vessel should
be deducted from the damages which he is entitled to recover
in this suit.   The determination of this question depends upon
the effect of the following facts : —

At the time of the collision, the "Robert E. Lee" was
insured in various sums, amounting to $50,000 in all, against
perils of the sea, river, and fire, by concurrent policies in differ-
ent insurance companies, each of which valued her at $75,000,
and contained this provision : "Whenever this company shall
pay any loss, the assured agrees to assign over to said company
all right to recover satisfaction therefor from any other person
or persons, town or other corporation, or the United States
government, or to prosecute therefor at the charge and for
account of the company, if requested.   And the said company
shall be entitled to such proportion of said damages recovered
as the amount insured by them bears to the valuation of said
vessel."

The insurance companies paid to the libellant in the aggre-
gate, for the loss sustained by his vessel by the collision, the
sum of $7,429.52, which was arrived at by assuming the dam-
age to her at $14,347.34, including about $2,000 for wages and
expenses during her detention, instead of profits lost, then
deducting one-third of the repairs, new for old, amounting to
$3,203.06, and charging the assured with one-third of the bal-
ance, as his portion of the risk assumed, not covered by the
insurance.

After the filing of this libel in the District Court, the insur-
ance companies executed and delivered to the claimants an
instrument in writing, by which, after reciting the collision,
the payment of the insurance money, and that they had never
authorized the bringing or prosecution of this suit, and desired
no suit brought on their account, they released, discharged, and
set over to the owners and master of the "Potomac" "any and
all right which they have in and to any damage, or claim of dam-
age, if any there be, whether legal or equitable, growing out of
the said collision, and authorize them to use the same, by way

of· defence or otherwise, in and to the said suit." There was no evidence that the insurance companies had ever authorized this suit to be brought, or that the claimants had paid any consideration for the release and assignment.

The claimants, under apt allegations in their answer and cross-libel, contended that the amount so paid by the insurance companies should be deducted from the libellant's damages, before bringing them into account with him. The District Court so held, and deducted the whole of that amount from the moiety of the damages to the " Robert E. Lee " which the libellant was entitled to recover against the " Potomac." The Circuit Court, on the other ·hand, held that ·no part of that amount should be deducted. This court is of opinion that neither of these decisions was correct.

The mere payment of a loss by the insurer does not indeed afford any defence, in whole or in part, to a person, whose fault has been the cause of the loss, in a suit brought against the latter by the assured. ·But upon familiar principles, often recognized by his court, the insurer acquires by such payment a corresponding right in any damages to be recovered by the assured against the wrong-doer, or other party responsible for the loss, and may enforce this right by action at common law in the name of the assured, or, when the case admits of proceeding in equity or admiralty, by suit in his own name. *Hall & Long* v. *Railroad Companies*, 13 Wall. 367 ; *Comegys* v. *Vasse,* 1 Pet. 193 ; *Fretz* v. *Bull*, 12 How. 466 ; *The Monticello*, 17 id. 152 ; *Garrison* v. *Memphis Insurance Co.*, 19 id. 312. See also *The Sarah Ann*, 2 Sumn. 206 ; *The Ann C. Pratt*, 1 Curt. C. C. ·340 ; *Clark* v. *Wilson*, 103 Mass. 219 ; *Yates* ·v. *Whyte*, 5 Scott, 640 ; s. c. 4 Bing. N. C. 272 ; 1 Arnold, 85 ; *Simpson* v. *Thomson*, 3 App. Cas. 279.

This right of the insurer is not contingent· upon the loss having been total, or upon its having been followed by an abandonment, but rests upon the ground that his contract is in the nature of a contract of· indemnity, and that he is therefore entitled, upon paying a sum for which others are primarily liable to the assured, to be proportionally subrogated to his right of action against them. Phil. Ins., sect. 1723 ; *Hall & Long* v. *Railroad Companies*, 13 Wall. 367, 371 ; *White* v.

*Dobinson*, 14 Sim. 273; *Quebec Assurance Co.* v. *St. Louis*, 7 Moo. P. C. 286; *Dickenson* v. *Jardine*, Law Rep. 3 C. P. 639, 644; *Simpson* v. *Thomson*, 3 App. Cas. 284, 293; *Darrell* v. *Tibbitts*, 5 Q. B. D. 560.

By the express terms of each of the policies upon the "Robert E. Lee," the insurers, upon payment of a loss, were entitled to demand from the assured an assignment of his right to recover damages against the "Potomac" for the loss so paid for, or to bring suit for such damages in his name, and to hold to their own use such proportion of those damages as the amount insured bore to the valuation of the "Robert E. Lee" in the policy. And that valuation is conclusive in respect of all rights and obligations arising upon the policy of insurance. *North of England Insurance Association* v. *Armstrong*, Law Rep. 5 Q. B. 244.

The amount which, by the effect of the contract of insurance, and of the payment of a loss under it, the insurers had the right to recover to their own use from the "Potomac," and her owners, they had the right to release and assign, if they saw fit, to those owners. The claim of the latter to a deduction on this account from the damages to be recovered against them does not arise out of any right of their own, but out of the right so derived from the insurers. The Circuit Court therefore erred in holding that no part of this amount should be deducted from the libellant's damages.

But the insurers are entitled only to damages to be recovered for an injury for which they have paid, and to such proportion only of those damages as the amount insured bears to the valuation in the policies. As the amount insured was only two-thirds of the valuation, leaving the owner to stand his own insurer for the remaining third, and as the damages to be recovered in this suit are for the injury to his whole interest, whether insured or uninsured, it is quite clear that the insurers had no right to more than two-thirds of the damages so recovered.

Besides, the insurance applied to all injuries caused to the insured vessel by collision, whether the collision was owing to unavoidable accident, or to negligence on the part of the other vessel, or to negligence of the master and crew of the vessel

insured. Phil. Ins., sects. 1049, 1099; *General Mutual Insurance Co.* v. *Sherwood,* 14 How. 351. The insurers therefore, within the limit of their policies, were responsible to the assured for the entire damage to his vessel, and not merely for the moiety thereof, which, because of the fault on her part as well as on the part of the other vessel, was all that he could recover against the latter; and the sum paid to him by the insurers is equally applicable to that portion of the damage for which he cannot recover against the other vessel and her owners, as to that portion for which he can so recover.

The necessary consequence is, that only one-half of two-thirds, or one-third, of the sum paid to the libellant by the insurers can be treated as paid on account of the damages which he can recover in this suit, and, therefore, under the claim made in the answer and at the argument, that third only can be deducted from those damages.

The result is, that the decree of the Circuit Court, awarding to the libellant the sum of $6,040.37, being one-half of the excess of the damages sustained by the "Robert E. Lee" over the damages sustained by the "Potomac," must be reversed, in so far as to deduct from that sum the sum of $2,476.51, being one-third of the sum paid to him by the insurance companies, and must in other respects be affirmed; and it is

*So ordered.*