**634**

THE Tanker HYGRADE NO. 24, Inc., as owner of The Barge Hygrade No. 24, Libelant,

v.

THE Tug DYNAMIC, Conners-Standard Marine Corporation, Claimant-Respondent.

No. 18976.

United States District Court
E. D. New York.

Oct. 27, 1955.

the report. The claims set forth by the libelant are as follows:

(1) $16,530, the fair and reasonable costs of repairing the damage including the sum of $3,150 for gas freeing, steaming and cleaning the barge. (Libelant claims this was agreed upon by a survey and insists that this amount could not be disallowed or reduced by the Commissioner. The claimant-respondent did not sign this survey. It will be noted, therefore, that this survey is the estimated cost of the repairs.)

(2) The sum of $3,375.68 demurrage for detention of this barge while she was undergoing repairs.

(3) The libelant claims full costs and interest.

The claimant-respondent resisted the claim of $16,530 which included the $3,-150 for gas freeing, steaming and cleaning, resisted the demurrage claim for $3,-375.68, and contends that interest and costs should not be awarded to the libelant because of circumstances which will be alluded to further on in this opinion.

The Commissioner in his report made the following allowances: $10,852.40 for repairs to the barge, $1,800 for gas freeing, and left the question of interest and costs to this Court.

Foley & Martin, New York City, for libelant. Christopher Heckman, New York City, Advocate.

Purdy, Lamb & Catoggio, New York City, for claimant-respondent. Vincent A. Catoggio, New York City, Advocate.

ABRUZZO, District Judge.

On October 1, 1953, an interlocutory decree was entered holding the claimant-respondent liable for damages sustained by the libelant's tank barge Hygrade No. 24 while in tow of the tug Choctaw. The claimant-respondent's tug Dynamic forced the barge against the bank of the New York State Barge Canal which resulted in this decree. This decree was affirmed by the Circuit Court. A Commissioner was appointed to hear the claim of damages and report to this Court. The Commissioner filed his report on May 18, 1955, and libelant has filed exceptions to

The libelant's claim is somewhat confused by the claim and chain of ownership of the Hygrade No. 24. Tanker Hygrade No. 24, Inc., was the owner of this barge. It was the only vessel it owned. At the time of the damage, Spentonbush Fuel Transport Service, Inc., was operating agent for this tanker and arranged the cargoes on a commission basis. Ira S. Bushey & Sons, Inc., was the sole stockholder of the corporation, Tanker Hygrade No. 24., Inc., and the Spentonbush Fuel Transport Service, Inc. The confusion which I have referred to has resulted from the fact that all of the accounting work of these two corporations, Bushey subsidiaries, was done under the supervision and control of Ira S. Bushey & Sons, Inc., who repaired the barge. More confusion was created when the insurance company paid $15,530 ($16,530,

less $1,000 deductible average) to libelant in lieu of its responsibility for the damage based on the fact that the surveyors' estimated damages indicated that the estimated repairs would amount to the sum of $16,530. From that amount the libelant paid $3,150 for gas freeing, steaming and cleaning the barge, retained $1,500 as working capital because it sustained a claimed loss of income during the period of detention while the barge Hygrade No. 24 was being repaired, and after the deduction of a small towing charge which is not of any consequence the Hygrade corporation remitted $10,852.40 to its parent corporation, Ira S. Bushey & Sons, Inc. It appears that the $1,500 retained by libelant was never entered on Bushey's books nor posted in any ledger or sales book. It further appears from the testimony that the comptroller of Bushey testified that Bushey usually entered a bill in an original entry book and finally transferred it into a sales book.

 The libelant claims that the admission of the survey in evidence setting forth the estimated and agreed price of repairs must be accepted as the amount to be allowed for these repairs. There are cases upon which damages can be allowed for estimated repairs even though they are never made. That point is not at issue because where a vessel has been repaired a libelant can only be compensated for the actual cost of the repairs. The Catharine v. Dickinson, 17 How. 170, 58 U.S. 170, 15 L.Ed. 233. Of the $15,530 paid by the insurance company it appears from the books of the Bushey company that $10,852.40 was paid to it for repairs, and I find the Commissioner was justified in making that particular allowance.

 The libelant is entitled to recover the reasonable costs of gas freeing, steaming and cleaning as an incident to the repair work. Claimant-respondent does not dispute that the work was necessary but does resist the amount demanded, to wit, $3,150. There is some testimony before the Commissioner that gas freeing might have been done for less than that amount. There is testimony that the Socony-Vacuum Oil Company used a system or method called the Butterworth system for gas freeing and cleaning barges such as this and that its charge for a barge of this type was $1,800. Claimant-respondent contends that the libelant should have used the Butterworth system, thereby saving approximately $1,350. The evidence as to whether Socony-Vacuum Oil Company would do the work is not definite. It does appear that Socony does not show a desire to take outside work—in other words, they use this system on their own boats and only take outside work if they have the time, and then it further appears that when they have the time they have more or less of a waiting list, so to speak, and would take a job from whatever client they chose. In view of the indefiniteness of the evidence that the libelant could have had the barge gas freed and cleaned by Socony-Vacuum, the amount it actually paid, to wit, $3,150 must be allowed. It must be observed that the time that the libelant might have to wait for Socony-Vacuum to do the work would add demurrage charges which might be more than the difference between $1,800 and $3,150.

 The libelant is entitled to compensation for demurrage. The cases so hold. The Potomac, 105 U.S. 630, 26 L. Ed. 1194; The Conqueror, 166 U.S. 110, 133, 17 S.Ct. 510, 41 L.Ed. 937.

 With respect to demurrage, the proof again becomes confusing. The Hygrade No. 24 was booked continuously for the season of 1948, to wit, from the opening of the Canal season to the close of the Canal season. There is evidence from the witness Keegan that all of the oil required to be carried under this booking and which Hygrade No. 24 had been doing exclusively had been carried. Nevertheless, we cannot be unmindful of the fact that during the period of detention the Hygrade No. 24 did not carry any oil. Whether it would have worked daily or spasmodically does not clearly appear from the evidence. There is evidence that its average profit was $198.72

a day when it was working. There are 19 days involved in this demurrage claim. It cannot be said, in view of the proof, that the libelant is entitled to the $198.72 a day that it made pursuant to its Canal booking agreement. Because of the indefiniteness of the proof as to whether or not the Hygrade No. 24 would have worked every day, an allowance of $125 a day for 19 days seems to be reasonable under the circumstances.

■ ■ Costs are discretionary, The Pocohontas, 2 Cir., 111 F.2d 451, but it is undoubtedly the rule that a successful libelant is entitled to its costs, proper disbursements, the expense of the damage reference including the Commissioner's report, and the charge of the reporter for the minutes of the hearings.

Libelant claims interest from July 30, 1948, the day of the collision, on all of the items except the demurrage, and upon this item it claims interest from August 27, 1948, the last day of the detention period. The claimant-respondent contests this claim on the ground that the libelant first relied on a survey which was not signed by the claimant-respondent; secondly, because the check of $10,852.40 paid to Bushey was not produced until a great many pages of testimony had been taken although subpoenaed (the claimant-respondent contends that had these checks been produced it could have made a deposit in that amount, but I do not see the force to this argument because it could have made a deposit immediately after the decree was signed by this Court); and, thirdly, for the reason that the reference was needlessly prolonged by the libelant.

■ ■ The libelant is entitled to interest on the cost of its repairs from the date of July 30, 1948, up to a date which I will proceed to fix. It is entitled to interest from August 27, 1948, on the demurrage up to a date which I will now fix. A notice of trial and note of issue was filed in this action on March 17, 1949. On April 6, 1949, the case was marked ready on the call calendar. On January 5, 1953, it was marked ready on the reserve calendar. On February 2,

1953, the case was adjourned to February 6, 1953, and eventually on October 1, 1953, an interlocutory decree was entered with findings of fact and conclusions of law. It would seem to me that twelve months for any possible appeal and the Commissioner's hearings, if held expeditiously, would be sufficient. The Court will not arbitrate the reasons for these delays. That the hearings before the Commissioner were unduly delayed by the libelant is evident. It is the duty of the libelant to expeditiously try his case. Any undue delay should be laid to its door. Discretion should therefore be used by the Court with respect to interest.

■ ■ The decree was affirmed by the Circuit Court of Appeals on June 3, 1954, 2 Cir., 213 F.2d 453. Six months would be ample time for a reference and a decision thereon, therefore, interest is allowed until December 31, 1954.

■ The libelant is also entitled to the costs and disbursements incurred by him and the costs of the reference.

Submit an order in accordance with this decision.

### On Motion for Reargument

On October 27, 1955, this Court rendered its decision upon exceptions filed by the libelant to the report of the Commissioner in Admiralty. The respondent now moves for reargument and for an order amending the decision, contending that libelant is not entitled to demurrage or interest.

In The Conqueror, 166 U.S. 110, at page 125, 17 S.Ct. 510, at page 516, 41 L.Ed. 937, it was held:

"That the loss of profits or of the use of a vessel pending repairs, or other detention, arising from a collision or other maritime tort, and commonly spoken of as 'demurrage,' is a proper element of damage, is too well settled both in England and America to be open to question. It is equally well settled, however, that demurrage will only be allowed when profits have actually been, or may be

reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty. In one of the earliest English cases upon this subject (The Clarence, 3 W.Rob.Adm. 283), it was said by Dr. Lushington that 'in order to entitle a party to be indemnified for what is termed in this court a "consequential loss," being for the detention of his vessel, two things are absolutely necessary,—actual loss, and reasonable proof of the amount. * * * It does not follow, as a matter of necessity, that anything is due for the detention of a vessel while under repair. Under some circumstances, undoubtedly, such a consequence will follow, as, for example, where a fishing voyage is lost, or where the vessel would have been beneficially employed.' To same effect are The Black Prince, [Vern. &] Lush. 568; The City of Peking, [L.R.] 14 App. Cas. 438; The Argentino, [L.R.] 14 App.Cas. 519."

In its brief, the respondent states that "There is no direct proof that the barge lost any employment and we cannot engage in any conjecture." Vincent L. Keegan, vice president of Spentonbush Fuel Transport Service, Inc., the operating agent for the Hygrade No. 24, testified before the Commissioner with respect to loss of profits during the barge's detention while undergoing repairs. His testimony revealed that the Hygrade No. 24 was the only vessel owned by libelant and it was booked continuously for the New York State Barge Canal Season of 1948 and could have been profitably employed during the period that she was undergoing repairs, as evidenced by the following testimony (Tr. 104–105):

"Q.4 During that period that the barge was cleaning tanks, and repairing, if she had been available for service, could she have been profitably employed? A. Yes, sir.

"Q.5 Have you requested your Accounting Department to make a statement showing the gross income of the Hygrade 24 for the months of April, May, June, July, September, October, and November of 1948? A. Yes, sir.

"Q.6 Have you also requested your Accounting Department to show on that statement the amounts paid out for towing of the barge during that period? A. Yes, sir. [It will be noted that the month of August is omitted—that is the month during which the ship was detained for repairs and demurrage requested and allowed.]

■ Regarding the statement, Keegan testified that its contents were taken from the books of his company which were kept in the regular course of its business (Tr. 106). This statement (Libelant's Exhibit 7 in evidence before the Commissioner) showed the hauling income, the cost of towing and the commission to Spentonbush during the months mentioned, and a computation shows a daily net earning of $198.72. While this evidence as to demurrage could have been presented in a more precise, definite and certain manner, it cannot be said that libelant did not prove loss of earnings during detention while undergoing repairs.

The Court in its original opinion allowed libelant demurrage at the rate of $125 a day for 19 days. It adheres to its former decision for the reasons set forth therein and for the further reason that from the daily net earnings of the Hygrade No. 24 the libelant paid the crew's salary.

In allowing interest in the case of O'Donnell Transp. Co. v. City of New York, 2 Cir., 215 F.2d 92, at page 95, it was stated:

"It is true, as urged by the libellant, that allowance of interest is the general rule and that disallowance is supportable only in the face of 'exceptional circumstances.' * * *"

■ Except as indicated in its original opinion, the Court finds no "exceptional circumstances" warranting a disallowance of interest.

The motion for reargument is granted, and upon reargument the original opinion of the Court is adhered to for the reasons indicated in this opinion.