DELTA MARINE DRILLING COM-
PANY, Plaintiff-Appellee,

v.

M/V BAROID RANGER, in rem, and Na-
tional Lead Company (Baroid Division),
in personam, Defendants-Appellants.

No. 71–2166
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 19, 1972.

---

* ▆ Rule 18, 5th Cir. See Isbell Enter-
prises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d
409, Part I.

GEWIN, Circuit Judge:

On December 7, 1966, the drill barge Chris Zeppa (Zeppa) owned and operated by the Delta Marine Drilling Company (Delta Marine), appellee, was performing drilling operations in the Gulf of Mexico for Chevron Oil Company pursuant to a written contract. In the early morning of that day the M/V Baroid Ranger (Ranger) owned by Baroid Division of National Lead Company (Baroid), appellant, came alongside the Zeppa to discharge drilling mud. While efforts were being made to secure the bow line of the Ranger to the Zeppa, the force of the waves caused the Ranger to slam into the aft port fender system of the Zeppa, causing extensive damage to the entire fender system. In March of 1968, Delta Marine brought suit[1] against Baroid claiming damages as a result of the collision of December 7. The case was tried without a jury and judgment was entered for Delta Marine. The district court awarded material and labor costs of repair of $7,543.86, lost income at the rate of $4,300.00 per day for 151 hours, and costs of towage by three tugs, $20,007.50, a total of $54,605.53. We affirm.

No attack is made here on the district court's finding of liability. The sole issue presented for review is whether the court erred in its determination of the measure and amount of damages awarded. The maxim applied in the event of marine collision is *restitutio in integrum*.[2] That doctrine, strictly construed, would limit damages to the difference in the value of the vessel before and after collision. However, that measure has long been equated with the cost of necessary repairs and the loss of earnings while they are being made.[3]

The extent of the damage to the Zeppa was not realized until Decem-

---

J. Y. Gilmore, Jr., Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for defendants-appellants.

Charles M. Steen, New Orleans, La., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

1. The suit was brought in rem against the vessel and in personam against Baroid.

2. *E. g.*, The Potomac, 105 U.S. 630, 26 L.Ed. 1194 (1882).

3. The Pocahontas, 109 F.2d 929, 931 (2d Cir. 1940); Pan-American Petroleum & Transp. Co. v. United States, 27 F.2d 684, 685 (2d Cir. 1928); *see* Continental Oil Co. v. SS Electra, 431 F.2d 391, 392 (5th Cir. 1970).

ber 29, 1966, and at that time repairs were commenced immediately. Baroid contends that it was prejudiced by the denial of the opportunity to conduct a joint survey of the damage prior to commencement of repairs. It has been held that where the party charged with liability is not given notice of any survey of alleged damage, a claim for damage is to be viewed "with some suspicion." [4] However, as the district court held, lack of a joint survey is not fatal.[5] In fact, the district court found that Delta Marine's efforts to commence repairs immediately "may have mitigated damages." We find no error in the court's treatment of this issue.

■ Delta Marine's contract with *Chevron* called for the payment of $4,300.00 per day of 24 hours while the vessel was drilling; and $3,500.00 per day of 24 hours for time spent in tow, for time in repair (up to 24 hours during any 30 day operating period) and for time spent in waiting on weather (up to a maximum of 7 days for each bad weather lay-off). The marine surveyor testified that a total of 151 hours were expended for repairs, inclusive of the hours lost as a result of adverse weather while repairs were being effected. The district court held that Delta Marine was entitled to recover the loss of income resulting from the collision at the rate of $4,300.00 per day for 151 hours. The record reveals that this 151 hours was computed by subtracting the number of hours for which Delta Marine was compensated by Chevron pursuant to the drilling contract from the total hours

the Zeppa was out of commission undergoing repairs.[6]

Baroid questions both the number of hours and the rate of compensation. It contends that recovery should be allowed only for the time during which actual repairs were being performed and at the $3,500.00 per day standby rate in the Chevron-Delta Marine contract. We find no error.

■ The district court correctly concluded that a plaintiff is entitled to recover income lost as a result of a collision where the loss can be proved with reasonable certainty [7] and that a contract is a proper guide for measuring that loss.[8] Theoretically, Delta Marine lost income at the full operational rate of $4,300 per day during the 12 days it was undergoing repairs for which Baroid should be liable. However, the contract provided that Chevron would continue to pay Delta Marine at the $3500 per day rate during certain bad weather, repair and towing periods and it did so during the 12 day period in question. Thus, the remaining hours for which Chevron was not responsible constitute the time period for which Baroid is liable. The rate of recovery during that period is properly $4300 per day, not $3500 per day as contended by Baroid.

■ Baroid's reliance on *The Pocahontas* [9] for the proposition that loss of use because of adverse weather subsequent to a collision is not recoverable is misplaced. In that case the subsequent weather damage itself was responsible for the damaged vessel's condition, and

4. Shepard S.S. Co. v. United States, 111 F.2d 110 (2d Cir. 1940); The Westchester, 254 F. 576 (2d Cir. 1818) (dictum).

5. 111 F.2d at 113.

6. Delta Marine's billing invoices actually show 149.5 hours of repair time for which they were not compensated by Chevron. Testimony at the trial, however, indicated that Chevron refused to pay 1.5 of the hours for which they were billed, hence this time was added to 149.5 for a total of 151 hours.

7. *E. g.,* The Potomac, 105 U.S. 630, 26 L.Ed. 1194 (1882); Continental Oil Co. v. SS Electra, 431 F.2d 391 (5th Cir. 1970); The Hygrade No. 24 v. The Dynamic, 233 F.2d 444 (2d Cir. 1956); City of Miami v. Shipping & Trading Co., 232 F.2d 847 (5th Cir. 1956).

8. Moore-McCormack Lines v. The Esso Cafden, 244 F.2d 198 (2d Cir. 1957).

9. 109 F.2d 929 (2d Cir. 1940), cert. denied sub nom. Eagle Transp. Co. v. United States, 310 U.S. 641, 60 S.Ct. 1088, 84 L.Ed. 1409 (1940).

not the collision which the Commissioner found required no lay-up for repairs at all. The adverse weather here prevented repair work from continuing, but the court found that the weather would not have hampered drilling operations. In such a case the lost time is properly included.

 Baroid further questions the district court's findings of lost time by arguing that time spent on repairs not caused by the collision should be excluded. There is no merit to this argument. The district court concluded, and we agree, that the non-collision repairs performed here were performed simultaneously with collision repairs and did not extend the time of detention beyond that which was required for collision repairs. In these circumstances a vessel owner may recover for the full detention.[10]

 The district court held that Delta Marine's cost of using three tugs for both towing and stabilizing the barge during the 151 hours of compensable repair time was to be included in the damage award. The record indicates that the cost of towage was a reasonable expense necessary for the repair of the barge. As such it was properly included in the damage award.[11]

 We have reviewed the briefs, record, and exhibits, and are convinced that reversible error has not been committed. We are not left with "the definite and firm conviction that a mistake has been committed."[12] The judgment of the district court is affirmed.

Affirmed.

10. *See* Skibs A/S Dalfonn v. S/T Alabama, 373 F.2d 101 (2d Cir. 1967); Clyde S.S. Co. v. City of New York, 20 F.2d 381 (2d Cir. 1927).

11. *See* The James McWilliams, 42 F.2d 130 (2d Cir. 1930); P. Dougherty Co. v. City of N.Y., 52 F.Supp. 397 (E.D. N.Y.1943).

12. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); United States v. U. S. Gypsum, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948);

King Fisher Marine Serv., Inc. v. Petroleos Mexicanos, 428 F.2d 1052, 1054 (5th Cir. 1970). In its brief Baroid claimed that the district court's award was "extravagant in fact", citing Brooklyn Eastern District Terminal v. United States, 287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240 (1936). At the time *Brooklyn Eastern* was decided an appeal to a court of appeals in an admiralty case was treated as a trial de novo. As the preceding cases illustrate the clearly erroneous rule is now the appropriate test.