Lewis F. STEVENS and Elvira B. Stevens, Plaintiffs-Appellants,

v.

F/V BONNIE DOON, her engines, machinery, tackle, etc.; Gene Koblick, an individual, Defendants-Appellees.

No. 82–4286.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1983.

Decided May 1, 1984.

Stanley L. Gibson, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for plaintiffs-appellants.

Richard E. Damon, Santa Cruz, Cal., for defendants-appellees.

Before TRASK, KENNEDY, and POOLE, Circuit Judges.

PER CURIAM:

The case is before us a second time for review of the proper measure of damages when a vessel sustains a collision at sea. We affirm.

The Carolyn F., a fishing vessel owned by appellants Stevenses, and the Bonnie Doon, a fishing vessel owned by one Koblick, collided off the coast of California on August 6, 1978. Following the collision, the Bonnie Doon proceeded to port and obtained temporary repairs costing $1,787.67. At that time, the repair yard estimated that it would cost another $5,000 to refasten the ship.

In September 1978, the Bonnie Doon was arrested by U.S. Marshals on a warrant pursuant to a libel filed by the Stevenses. In February 1980, while the vessel was still under seizure, Koblick obtained an estimate of $20,005.68 from the Seabreeze Yacht Center to repair the Bonnie Doon.

At the first trial, the district court apportioned 70 percent of the fault of the collision to the Carolyn F. and 30 percent to the Bonnie Doon. The court found total damages to the Bonnie Doon were $21,793.35, comprised of $1,787.67 for temporary repairs immediately after the collision, and the $20,005.68 for full repairs, based on the estimate obtained eighteen months after the collision. The district court entered judgment in favor of the Bonnie Doon for $53,755.36. This constitutes 70 percent of each of two amounts, i.e., $21,793.35 for repair costs to the Bonnie Doon, $55,000 for loss of use during the lawful arrest of the Bonnie Doon.

The Stevenses appealed the judgment. While affirming on most issues, we held the district court erred in awarding damages for loss of use during lawful arrest, and further that it may have erred if it included in the damage award any repair costs resulting from the Bonnie Doon's deterioration while under lawful arrest prior to the first trial. *Stevens v. F/V Bonnie Doon*, 655 F.2d 206, 209 (9th Cir.1981) ("*Bonnie Doon I*"). We remanded for further proceedings to determine what the costs of repairs were and directed exclusion of repair costs resulting from deterioration. *Id.*

On remand the district court held a further hearing on damages and heard expert testimony presented by Koblick to establish the cost of repair of the Bonnie Doon. The district court increased from $21,793.35 to $36,230.97 the amount of damages to the Bonnie Doon that it found had been proximately caused by the collision. The larger amount did not include damage due to the deterioration of the Bonnie Doon while in custody. The Stevenses again appeal, now contesting the new finding on damages.

In reviewing the action of the district court on remand, we consider two grounds of error: first, whether the district court could properly take new evidence in the second trial on damages, consistent with the court's order of remand; and, second, whether the damages were fixed under proper legal standards.

1. *Terms of the Remand Order*

On remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. *Firth v. United States*, 554 F.2d 990, 993 (9th Cir.1977). The mandate is controlling as to all matters within its compass, but leaves to the district court any issue not expressly or impliedly disposed of on appeal. *Id.; Kearns*

*v. Field,* 453 F.2d 349, 350–51 (9th Cir. 1971).

■ The mandate issued in *Bonnie Doon I* did not forbid taking new evidence on the question of damages.[1] As the language suggests, this court was primarily concerned with an apportionment of the damage award between repair costs associated with the accident itself and those associated with the later deterioration of the vessel while under arrest. The district court could have taken evidence based on an analysis of its prior award. But it was no abuse of discretion for the court instead to take new evidence on the costs of repairs, as long as that evidence excluded costs for repair of damage due to deterioration during the Bonnie Doon's lawful detention.

### 2. Damages

■ The basic principle applied by courts in admiralty cases in ascertaining damages, *restitutio in intergrum,* requires that the injured party should be fully compensated for the loss sustained. *Delta Marine Drilling Co. v. M/V Baroid Ranger,* 454 F.2d 128, 129 (5th Cir.1972) (citing *The "Potomac,"* 105 U.S. 630, 15 Otto. 630, 26 L.Ed. 1194 (1882)). *See also* 15 C.J.S. *Collision* § 175 (1967). Damages are measured by the diminution in value of the property, that is, "the difference between the value of the vessel before and after the collision." *Bouchard Transportation Co. v. Tug Ocean Prince,* 691 F.2d 609, 611 (2d Cir.1982). *See also* Restatement of Torts (Second) § 928. Where the destruction of property has not been total and repairs are possible, the costs of repairs may be used as evidence of the diminution in value. *Pinto v. Fernwood,* 507 F.2d 1327, 1331 (1st Cir.1974); *Delta Marine Drilling Co. v. M/V Baroid Ranger,* 454 F.2d 128, 129 (5th Cir.1972); *The Pocahontas,* 109 F.2d 929, 931 (2d Cir.), *cert. denied sub nom., Eagle Transportation Co. v. United States,* 310 U.S. 641, 60 S.Ct. 1088, 84 L.Ed. 1409 (1940).

■ To the extent possible, the diminution in value should be determined as of the moment of injury. *See Standard Oil Co. v. Southern Pacific Co.,* 268 U.S. 146, 155, 45 S.Ct. 465, 466, 69 L.Ed. 890 (1925); *The Baltimore,* 75 U.S. (8 Wall.) 377, 385, 19 L.Ed. 463 (1869); *Shipowners & Merchants Tugboat Co. v. United States,* 205 F.2d 352 (9th Cir.), *cert. denied,* 346 U.S. 829, 74 S.Ct. 51, 98 L.Ed. 353 (1953); *Detroit & Cleveland Navigation Co. v. The Elbert H. Gary,* 161 F.Supp. 570, 577 (E.D. Mich.1958), *aff'd sub nom., United States Steel Co. v. Detroit & Cleveland Navigation Co.,* 264 F.2d 247 (6th Cir.1959). The rule has the salutary effect of fixing damages at a specific time, keeping the influence of market fluctuations and price changes to a minimum. *See United States v. Shipowners & Merchants Tugboat Co.,* 103 F.Supp. 152, 153 (N.D.Cal.1952), *aff'd,* 205 F.2d 352 (9th Cir.), *cert. denied,* 346 U.S. 829, 74 S.Ct. 51, 98 L.Ed. 353 (1953).

■ The trial court is not required to ascertain damages as of the date of collision in every case, however. The ease and practicabilities of obtaining expert valuation testimony, or testimony from each party that is subject to comparative evaluation

---

1. In pertinent parts this court's mandate reads:

 We agree that damages resulting from deterioration of the boat during its period of lawful detention cannot be recovered for the same reason that loss of profits due to detention cannot be recovered. However, we have no way of knowing whether the district court erroneously included such damages in its award of $21,793.35. A remand for further proceedings and findings in this regard is thus necessary.

 . . . . .

 We conclude therefore that appellee is entitled to prejudgment interest only on the ap-

 proximately $1,787 he actually spent to repair the boat. If on remand appellee is found to be entitled to an additional sum for damages from the collision, he is not entitled to prejudgment interest on that as yet unexpended amount.

 . . . . .

 On the issue of damages to appellee's boat, judgment is reversed and the case is remanded for a determination of the extent of damage due to the collision itself rather than to subsequent deterioration.

 *Stevens v. F/V Bonnie Doon,* 655 F.2d 206, 209–10 (9th Cir.1981).

by the trial court, may dictate setting a different date for valuation, such as the date for close of discovery or the date of trial. The district judge has wide discretion in this regard. *Cf. In the Matter of Bankers Trust Co.,* 658 F.2d 103, 106–08 (3d Cir.1981), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982); *Rivera Morales v. Benitez de Rexach,* 541 F.2d 882, 886 (1st Cir.1976); *Hysell v. Iowa Public Service Co.,* 534 F.2d 775, 786 (8th Cir.1976); *Drake v. E.I. DuPont deNemours & Co.,* 432 F.2d 276, 279 (5th Cir. 1970); *Harry Alter Co. v. Chrysler Corp.,* 285 F.2d 903, 906–07 (7th Cir.1961).

The complaint in this action alleged $6,787.67 in damages. This was based on $1,787.67 for temporary repairs and a $5,000 estimate made in September 1978, approximately one month after the accident. Koblick introduced in the first damage trial an estimate made in February 1980 of $20,005.68 for repairs. There was testimony that the $5,000 estimate did not include the costs of full repairs to the Bonnie Doon. Faced with a $5,000 estimate that may not have included all repairs and a $20,005.68 estimate that, according to testimony, did include all repairs, it was not error for the district judge to adopt, in the first trial, the higher figure as the appropriate measure of damages, even though the higher figure was arrived at using an estimate made eighteen months after the accident.

At the hearing after remand, defendant introduced new evidence to show the cost of repairs to the Bonnie Doon, based on an estimate made in December 1981, forty months after the accident. In accordance with our instructions on remand, the estimate excluded costs for any deterioration during the lawful detention. The expert testified that cost of repairs in 1981 would be $34,443.80 and, in response to questions on direct examination, stated that this cost had risen probably some 50 percent from what repairs would have been in 1978, the time of the accident.

██ Stevens made two motions to limit the effect of this evidence. The first was a motion to limit damages to $6,787.67, the sum set forth in the pleadings. There was no error in denial of the motion. *See* Fed. R.Civ.P. 15(b). The second motion was to exclude the evidence entirely on the ground that the only proper measure of damage was the repair cost at the time of the collision, not the repair cost forty months later. As we have indicated, the optimum point for assessment of damages is the amount of loss at the time of the collision, but the district court has discretion to fix a different time to accord with the practicalities of obtaining reliable evidence. We find no error in the court's accepting the $34,-443.80 figure here. First, plaintiffs offered no expert of their own to testify on the inflation rate or the cost of repairs as of 1978. Second, the trial judge was free to disregard the defendant's testimony that costs had risen by 50 percent. *See Alma v. Manufacturers Hanover Trust Co.,* 684 F.2d 622, 626–27 (9th Cir.1982). Finally, even if he had accepted that testimony, and had fixed damages as of 1978, it would have been appropriate to add interest from that date, and the net effect would have been an award of damages approximating the $34,443.80 fixed by the trial court. *Cf. Western Pacific Fisheries, Inc. v. SS President Grant,* slip op. 1709, 1718–1719, 730 F.2d 1280, 1288–1289 (9th Cir.1984) (28 U.S.C. § 1961 (1982) fixes the rate for prejudgment interest).

### 3. *Interest*

██ We held in *Bonnie Doon I* that prejudgment interest could not be awarded from the date of the accident except for the $1,787.67 actually spent by Koblick. 655 F.2d at 209–10. The holding is consistent with the rule that prejudgment interest on money not spent is inappropriate when the injured party recovers for loss of use, known in admiralty as demurrage. *See* Dobbs, Remedies § 3.5 at 172. The rationale is that "to grant both demurrage, which theoretically includes the owner's return on his risk capital, and interest on the owner's outlay for repairs before the outlay is made, is to put the owner in a better posi-

tion than he would have been but for the collision." *Independent Bulk Transport, Inc. v. The Vessel Morania Abaco*, 676 F.2d 23, 26 (2d Cir.1982) (quoting *The Hygrade No. 24 v. The Dynamic*, 233 F.2d 444, 447 (2d Cir.1956)). *See Firemen's Fund Insurance Co. v. Standard Oil Co.*, 339 F.2d 148, 159 (9th Cir.1964) (citing *The Hygrade No. 24* with approval). Generally, the injured party may claim loss of use or interest, but not both. *See* Dobbs, Remedies § 3.5 at 166.

 We did not face in *Bonnie Doon I* a problem of double recovery, since Koblick was not awarded damages for loss of use. Denial of interest was, nevertheless, appropriate because we held in *Bonnie Doon I* that the loss of use of the Bonnie Doon was due to the lawful arrest and not due to the collision. 655 F.2d at 209. To allow recovery of prejudgment interest in these circumstances would be tantamount to allowing recovery for loss of use, and that would be contrary to our holding in *Bonnie Doon I* that loss of use was not recoverable.

Another factor supported our denial of interest in *Bonnie Doon I.* Damages, as measured by the costs of repairs, were estimated as of the time of the trial and not as of the time of the accident. Under these circumstances, interest should be awarded only from the time of judgment and not from the time of the accident. *See* Restatement of Torts (Second) § 913(a)(1). This rule avoids a duplicative recovery for the effects of inflation between the time of injury and the date on which damages were ascertained. The duplication arises because the market rate of interest, which courts are instructed to award under 28 U.S.C. § 1961, reflects both the real rate of interest and the nominal rate of inflation. S. Goldfeld & L. Chandler, The Economics of Money and Banking 424 (1981).

The trial court awarded damages based on an estimate of the cost of repairs as of the second trial, and since the Bonnie Doon was not lawfully detained at that time, we make the injured party whole by awarding interest on $1,787.67 of the award from the date that money was spent and on the remainder of the award from the date of the judgment after remand.

AFFIRMED.